UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN M. SPAHN, IRA, on Behalf of Himself and All Others Similarly Situated, | ) ) | CLASS ACTION |
| | ) | |
| Plaintiff, | ) | Cause No.: 4:04CV00086 HEA |
| vs. | ) | |
| | ) | |
| EDWARD D. JONES & CO., L.P., | ) | Consolidated with: |
| THE JONES   FINANCIAL COMPANIES, | ) | |
| L.L.L.P., EDJ   HOLDING COMPANY, INC., | ) | 4:04CV00189 CAS |
| JOHN W. BACHMANN, DOUGLAS E. HILL, | ) | 4:04CV00225 DJS |
| MICHAEL  R. HOLMES, RICHIE L. MALONE, | ) | 4:04CV00282 DJS |
| STEVEN  NOVIK, DARRYL L. POPE, and | ) | 4:04CV00466 HEA |
| ROBERT   VIRGIL JR., | ) | 4:04CV00467 HEA |
| | ) | |
| Defendants. | ) | |

---

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RACHEL M. ENRIQUEZ, Custodian | ) | |
| for Diego Enriquez under IL/UTMA, | ) | |
| On  Behalf of Herself and | ) | |
| All Others  Similarly Situated, | ) | Cause No.: 4:06-CV-00547 HEA |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| EDWARD D. JONES & CO., L.P., and | ) | |
| EDJ HOLDING COMPANY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**OBJECTIONS TO PROPOSED SETTLEMENT
AND NOTICE OF INTENTION TO APPEAR**

COME NOW, Rebecca Diederich, Mark Hill, Janine Bowser, Ryan Bowser, Alyssa Bowser, Colton Bowser ("Objectors") Class Members to this action, by and through their  undersigned counsel, and hereby file these Objections to the Proposed Class Action Settlement, give notice of their counsel's intent to appear at the July 20, 2007 fairness hearings, and request award of incentive fees for serving as named class members.  In support of their objections, these Objectors state as follows:[1]

I.    SUMMARY OF OBJECTIONS

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable and adequate.

1.    The relief includes vouchers for current customers..  Effectively it is a Acoupon settlement, which unnecessarily requires additional action by Class Members to obtain relief and thereby assures Defendants will not pay as much as the Settlement implies.

2.    The claims and redemption process, and inability to transfer vouchers, is unnecessarily burdensome and restrictive, and clearly intended to  inhibit and discourage Class Members from receiving a benefit in return for the Release and to minimize the cost to Defendants.  That is, the actual total value of the vouchers is far less than the asserted value because many vouchers will not be used fully or at all.

3.    The nearly $29,000,000-$39,000,000[2] million in attorneys' fees and expenses

---

[1]    Objectors' signatures authorizing these Objections are attached.

[2]    The fee calculation is confusing at best.  The Notice provides, p.1, for no more than 30% of the total value of cash ($55,000,000) plus vouchers ($72,500,000) totaling $127,500,000, which suggests a fee of $38,250,000.  With expenses of $712,000, the total fees and expenses

*(footnote continued on next page)*

contemplated in the Agreement is excessive in light of gross inadequacy of the proposed Settlement, and absence of proof of the actual amount of value which Class Members would obtain, all of which are necessary for ascertaining a fair fee.

4.      Attorneys' fees are not payable with vouchers, as is the relief payable to the Class Members who are current customers.  Attorneys should be paid with the same "currency" that Class Members receive.

5.      Fees are not related to the actual value ultimately received by Class Members.  If the value of benefits actually received by Class Members falls below an established level of value -- that is, vouchers actually redeemed -- attorneys' fees should decline accordingly[3].  Class-action contingency fees, may be cross-checked with a multiplier with a lodestar, but must be contingent upon benefits actually received by Class Members -- not contingent upon merely ending the lawsuit with a full release for Defendants.

6.      The timing of attorneys' fee payment is not linked to the timing for receiving relief,

---

could be $38,962,000.  The Notice then provides, p. 4, that the fees are payable from the Cash Component of the Settlement Fund after an estimated $26,300,000 is paid to former customers, leaving $28,700,000 for attorneys' fees.  The fee payment could increase according to how many checks are not cashed on time by former customers.  The bizarre result is that Class Counsel would receive more fees if their clients receive less relief -- and, of course, more cash than their clients.

Despite the apparent $10,000,000 shortfall for fees, the Plan of Allocation, at 8, contains a strange and hollow provision for giving any surplus in the Fund to charity.  The controlling documents, that is, the Stipulation and the Plan of Allocation, are even less precise than the Notice about the division of cash among former customers and attorneys.

[3]      The Plan of Allocation amazingly provides the opposite effect, at p.7:  If some former customers fail to cash their checks on time, Class counsel will receive more money than if all former customers cash checks.  In other words, less money for Class Members equals more money for Class Counsel!

much of which cannot be realized by Class Members for years after the Effective Date, even though fees would be payable within days after the Effective date.  Attorneys must not be paid before the clients are paid.

7.     No oversight or incentive exists to establish how much, if any, relief actually is received, and whether the agreement is being administered promptly, properly and fully.  This obvious and necessary component is particularly critical upon considering that the settlement would be administered to customers by Defendants, who would not be parties in this litigation if they had not been accused of mistreating customers in the first place.

8.     Vouchers must be transferable so a secondary market can develop and thereby enable current customers to have a choice between cash or vouchers.


II.     SUMMARY OF RELIEF

A.     Current customers.

For the 3.7 million Class Members who are current customers, the relief consists of voucher credits.  Customers can use a third of their credits in each of three consecutive 12-month periods, whereupon unused credits expire.  Credits apply to commissions and fees.  Defendant would mail notice and an identification number for the amount of credit available in each upcoming period. Customers must tell their financial advisor the number when a buy or sell order is placed.  Value in any transaction cannot exceed $10.  Vouchers cannot transfer.  To get full value, current customers must continue doing business with Defendants for more than two years, and then only if they use the vouchers at the prescribed times in the prescribed way.

To obtain relief, current customers must[4]:

1.   Receive by U.S. Mail,[5] either with or separate from the regular monthly or quarterly statement, and keep available, notice of the amount of voucher available for the first redemption period, and the corresponding redemption number.

2.   Prior to the second redemption period, receive and keep available, notice of the voucher amount available and the corresponding redemption number.

3.   Prior to the third redemption period, receive and keep available, notice of the voucher amount available and the corresponding redemption number.

4.   Remember to tell the financial advisor,
     (a)  at the time of a transaction about the voucher,
     (b) the voucher number,
     (c) not to exceed one-third the total voucher relief amount,
     (d) not to exceed $10, and
     (e) only to a single fee, charge or commission.

5.   Use one-third of the voucher value prior to the expiration date of the first period,

6.   Use another third of voucher value prior to expiration of the second period, and

7.   Use the final third of  voucher value prior to expiration of the final period.

If a Class Member stumbles over any of these many requirements, relief is diminished or denied.  The foreseeable results are that Class Members will not receive, or will misplace, and/or will forget about, and/or will not have qualifying transactions for use of, the vouchers.  Of course, Class Members cannot transfer vouchers, so they cannot even sell them to evade the gauntlet of redeeming them.  The obvious purpose of imposing so many hurdles is to minimize the amount of relief actually received by Class Members, and actually provided by Defendants.

---

[4]    The procedure appears on pp. 2-6 of the Plan of Allocation.

[5]    Edward Jones need not provide notice with a current customer's electronic account statement, thereby risking disenfranchisement of customers who prefer that method over U.S. Mail, further reducing the cost to Edward Jones be cutting relief.  See Plan of Allocation, p. 5.

The voucher redemption process obviously is structured to discourage participation, and thereby reduce the total value B and, thus, the cost to Defendants B to little or nothing.  To assure that the Settlement is more than a mirage, a minimum value must be established for the amount of relief actually used, not merely available for use.  If a minimum value is not received by Class Members, then cy pres relief must be available to distribute some form of benefit to a charitable organization to assure that Defendants are exchanging tangible and fair value for their release.  Other inherent problems with much-criticized Acoupon settlements appear below.

B.    Former customers.  The 1.4 million Class Members who no longer are customers will receive cash. The amount depends upon the value of vouchers for current customers, discounted to present value, and mailed within 90 days to the former customers' last known addresses.  The Notice, at p. 1, estimates the value at $17.99 each, but the amount is a function of the amount of credit vouchers, discounted to present value, and calculated by an expert hired by Class Counsel.  See Plan of Allocation, p. 6.[6]

III.    SUMMARY OF ATTORNEY FEES PROVISIONS

Defendants agree not to oppose a request for fees of less than 30% of the total value of cash and vouchers, purported to be $127,500,000, meaning the maximum fee would be $38,250,000.[7]  The

---

[6]    A blatant conflict of interest appears in that Class Counsel would hire the valuation expert, but the amount of fee received by Class Counsel is directly related to how little the former customers receive.  See Plan of Allocation, pp. 7-8, which provides for fees to be paid after current customers are paid, and then from any uncashed checks of current customers.

[7]    The 30% figure appears in the Notice, pp. 1 and 4, but is curiously absent from the Stipulation and from the Plan of Allocation.

Notice, p. 4, estimates fees would be $28,700,000, which is more than the estimated $26,300,000 payable to former customers.  Remarkably, as the amount of relief for former customers declines by failure to cash checks, the amount of Class Counsel's fee increases.  See Plan of Allocation, pp. 7-8. The Stipulation sets a maximum amount of relief payable by Defendants, but does not contemplate a guaranteed minimum amount of relief. So, it does not pay attorneys according to how much relief is actually received by their clients, the Class Members. Class Counsel would be paid within a few days of the Effective Date, and does not require fees to be paid fully only when Class Members receive relief.

Effectively the arrangement makes the fees contingent upon settling the litigation -- and providing a complete release for Defendants B  rather than upon serving clients by making sure the promised relief actually gets into Class Members' pockets.  Class Counsel would get paid fully even if little or no value is received by their clients, the Class Members, including those who do not or could not use the relief within the allotted time periods.

The Settlement Agreement fails to require that some fees be withheld pending Court approval of a report by Class Counsel to the Court concerning distribution of relief.[8]  Such a provision is critical because it acknowledges that Defendants have control of implementing the settlement (after

---

[8]      Reservation of fees pending a report of distribution of relief was proposed in Objections to a class action pending against Nextel, a wireless telephone company which recently merged with Sprint, concerning some similar claims and proposing  similar relief.  The Court directed the settling parties to consider revisiting the settlement in light of the objection, and approved the settlement after it was adjusted to accommodate this important feature.  See In re WIRELESS TELEPHONE FEDERAL COST RECOVERY FEES LITIGATION, 03-md-01559-FJG (W.D. Mo. 2004), aff'd on other grounds, 922 F.3d 922 (8th Cir. 2005).

the Administrator processes claims and verifies eligibility).  Such a monitoring requirement provides

for accountability, and recognizes the possibility that minimal amounts of relief will be redeemed.

IV.   OBJECTIONS

In Amchem v. Windsor, 117 S.Ct. 2231, 2248 (1997), the Supreme Court held that all of the

requirements of class certification must be met, even if the certification is sought only for the

purposes of settlement.  Thus, those seeking certification must satisfy four prerequisites.  First, the

class must be so numerous that joinder of all members is impracticable; second, common questions

of fact and law must predominate over any questions affecting only individual members; third, the

representative parties must fairly and adequately protect the interest of the class; and forth, class

action must be the appropriate method for the fair and efficient adjudication of the controversy.

The Proposed Class Action Settlement is inadequate, unfair and unreasonable for the following

reasons.

A.   Vouchers are inappropriate and inadequate.

All Class Members paid Defendants with cash, so they should receive cash as relief.  Yet, the

relief is burdened with requirements, restrictions and qualifiers which can be intended only to (1)

inhibit redemption and (2) conceal the near worthlessness of the relief.

1.   Restrictions virtually eliminate value of relief.

On its surface, the Settlement Agreement appears to provide relief for all Class Members. However, the unnecessary and cumbersome qualifications and restrictions clearly were designed to deter Class Members from obtaining significant relief.  First, the rules are confusing.  Second, the process is onerous and requires constant involvement by Class Members to avoid losing relief.  Class Member must constantly take additional actions, within allotted time periods, to avoid missing, surrendering, or otherwise being stripped of relief.  All of this effort would obtain only a few dollars' (or less) worth of relief.  If Class Members stumble at any point, their relief is lost.  Obviously the Defendants are expecting, or at least hoping, that the frustrated Class Members will simply abandon the relief because the process is more confusing and troublesome than it's worth.

This settlement is unfair and inadequate because of the imposition of a procedure that requires Class Members to use vouchers through an elaborate process as described above, in order to obtain a benefit.  The process, by requiring additional action (i.e., notifying financial advisors and providing a redemption number) by Class Members who are current customers, effectively is the same as submitting claim forms.   A claims-form process results in far less that 10% of the claims forms being returned.  Steve Tilghman, a class action settlement administrator who has performed over 175 settlements, testified that the Avast majority of settlements that required filing a notice of claim resulted in less than 10% of the class members sending in the claims form.  Sylvester, et al. v. Cigna Corp., 369 F.Supp.2d 34, 44 (D.Me. 2005).

The obvious way to reduce the effect of this elaborate process, and thereby show there is a genuine interest in providing substantial relief, is to remove the elaborate restrictions, and simply apply credits automatically to fees, charges, and commissions -- which would require far less

administration by Edward Jones, and eliminate the loss of value that follows from forgetting to claim the credit against fees and commissions.

2.      Settlement effectively offers coupons.

The relief, as proposed, requires further action by Class Members to benefit from the relief. That is, the Settlement effectively is providing coupons.  Coupon settlements have been criticized widely.  See "Consumer Class Actions and Coupon Settlements: Are Consumers Being Shortchanged?", Advancing the Consumer Interest, Vol. 12, No. 2, Fall/Winter 2000, wherein Westchester County (New York) Court Judge Thomas A. Dickerson describes the shortcomings of such settlements.  For instance, he notes that in Kahn v. Bell Atlantic NYNEX Mobile, New York Law Journal, June 4, 1998, p. 29, Col. 4 (N.Y. Sup.) the court rejected a proposed settlement offering class members "free airtime" because it could not "make an independent assessment of the value of the airtime."

In the instant case, the Court cannot ascertain the value of the relief until it knows (1) how many customers are covered, and (2) how much of the relief actually will be used.  With no minimum value, and no cy pres provision to cover a shortfall between the minimum and actual values, the Court has no basis for figuring what the relief is worth and, thus, no basis for deciding if the settlement is fair.  Of course, without knowing what the relief is worth, the Court also will have no basis for

deciding what amount of attorneys' fees is fair.[9]  Without knowing the value of the settlement to Class Members, the Court cannot make an independent finding about whether the Settlement is fair.

Consider In re General Motors Corp. Pickup Truck Fuel Tank Products Liability Litigation, 55 F.3d 768 (3d Cir. 1995), cert. denied, 516 U.S. 824 (1996), wherein the court rejected a settlement (seeking $4,000,000 in attorneys fees) which offered  $1,000 coupons for purchases of a new trucks. In Maffei v. Alert Cable TV of North Carolina, 342 S.E.2d 867, 872 (N.C. Sup. 1986), class certification was denied where the 29-cent relief was worth less than the cost of postage and stationery for submitting a claim.

Part of the difficulty in identifying the value (and proper attorneys fee) of a coupon settlement is the uncertain and low redemption rate -- sometimes called the "take rate."  Judge Dickerson's article notes that redemption rates for food and beverage coupons consistently average between 2% and 6%.   In Bloyed v. General Motors Corp., 881 S.W.2d 422, 431 (Tex.App. - Texarkana 1994), the court rejected a settlement because the anticipated take rate -- between 10% and 46% -- was too low.  Judge Dickerson cites several cases which have solved this problem by requiring that coupons continue to be issued until an agreed value has been redeemed:  Feldman v. Quick Quality Restaurants, Inc., New York Law Journal, July 22, 1983, p. 12, col. 4 N.Y.Sup.); In re The Coca-Cola Co. Apple Juice Consumer Litigation, No. E-47054 (Ga.Sup.Ct. Fulton Co. May 4, 1998); Tepper v. Tropicana Products, Inc., No. 96-000846 (Fla. Cir. Ct. Manatee Co. Nov. 13, 1998), Muller v. Cadbury Schweppes PLC, No. 96-0148788 (Conn. Super. Ct. Waterbury Jud. Distr. June

---

[9]    See the article attached as Exhibit B, AFederal Court Draws Roadmap to Scrutiny of Attorneys' Fees in >Coupon Settlements, Legal Backgrounder Vol 21, No. 14, Thomas M. *(footnote continued on next page)*

29, 1999).  Judge Dickerson also found cases wherein cash, coupons or goods were given to charity until the agreed settlement amount was met:  Ohio Public Interest Campaign v. Fisher Foods, 546 F. Supp. 1 (N.D. Ohio 1982); Gordon v. Boden, No. 89 CH 6531 (Ill. Cir. Ct. Cook Co. July 14, 1995).

Coupon settlements also have been rejected in Clement v. American Honda Fin. Corp., No. 3:95cv 660 (AHN) (U.S. D. Conn. 1997), and Buchet v. ITT Consumer Fin. Corp., 845 F.Supp. 684 (D. Minn.), as amended, 858, F.Supp. 944 (1994), among others.


B.      Attorneys fees cannot be approved.

1.      Value of settlement must affect amount of fees.

Contingency fees should be payable according to the value of results actually achieved. Regardless of the lodestar, or the amount of work, or the success in concluding complex litigation, or the theoretical gross amount of value, or the number of claims submitted, fees should be paid only according to the value which actually reaches Class Members' pockets.  If Class Members cannot obtain significant quantifiable relief, because the relief is too confusing, or the restrictions and qualifications are too onerous, their lawyers have not provided a service to them.  No matter how hard lawyers work, if they do not provide worthwhile relief to their Clients, the Class members, they should not be paid in regard to those Class Members.  If the relief is delivered, but is less than

---

Smith and Natalie S. Watson, (Washington Legal Foundation April 7, 2006.)

promised, then the fee should decline accordingly.[10]  The purpose of the settlement is to obtain value for the Class Members, as well as for the Defendant and Class Counsel.

The settlement value is unknown; the voucher usage could be zero, in which case there would be no class benefit to current customers.  Currently there is no way to predict how many people will make claims and what the value of these claims will be.  It could be the full $72,500,000, or nothing, or anything in between.  There is no way to currently estimate that.  Therefore, the proposed  fee to class counsel must be questioned.   Only then, after the Court knows what the value of the settlement was to the class, can the Court judge the relationship between the settlement and the fee.  The Court in its capacity as a fiduciary to the class should have this information before awarding the fee.  The Court should wait until after there is a report to the Court concerning the real value of the settlement for current customers, and award immediate payment only in regard to the $55,000,000 cash which has been paid into escrow

2.      The Class must be protected

The Court may also wish to view this case as similar to a A common fund case and determine the amount of the fee as a portion of the total recovery to the Class.  However, since no evidence has been submitted concerning the actual realized value of the settlement, the Court should defer ruling on the Fees until such time as it receives evidence concerning the probable benefit to the Class.  The

---

[10]      In one recent case, In Re: Excess Value Insurance Coverage Litigation, Case No. M-21-84-(MDL No. 1339)(S.D.N.Y. Nov. 2, 2005), Judge Richard M. Berman chose to wait for the coupon claim process to end so he could determine the actual benefits paid to the class before
*(footnote continued on next page)*

Court is a fiduciary for the Class when the question of attorneys fees arises.  At that point, Class

Counsel and the Class have differing goals.  This is especially true, as here, when there is no evidence

of what the total realized benefit to the Class ultimately will be.  In this case, the fee would have  no

apparent relationship to the amount of the settlement fund.  Dozens of cases have confirmed and

identified this fiduciary role:

> Before considering the proper methodology for awarding attorney's fees out of a
> common fund, the Court feels compelled to define its role in these proceedings.  When
> an attorney makes a claim for fees from a common fund, his interest is adverse to the
> interest of the class in obtaining recovery because the fees come out of the common
> fund set up for the benefit of the class. Rawlings v. Prudential-Bache Properties, Inc.,
> 9 F.3d  513, 516 (6th Cir. 1993).  This divergence of interests requires a court to
> assume a fiduciary role when reviewing a fee application because there is often no one
> to argue for the interests of the class: class members with small individual stakes in the
> outcome will often fail to file objections because they lack the interest or resources to
> do so and the defendant who contributed to the fund will usually have scant interest
> in how the fund is divided between the plaintiffs and class counsel.  In Re Copley
> Pharmaceutical, Inc. 1 F. Supp. 2d 1407 (D. Wyo. 1998).  (emphasis added.)

In Wise v. Popoff, et al. 835 F.Supp. 977, (E.D. Mich. 1993) the court describes the roles:

> An attorney's role changes once he files a fee petition.  No longer a fiduciary for his
> client he becomes nothing more complex than another claimant against the fund created
> for the client's benefit.  The court must, in turn, become A the fiduciary for the fund's
> beneficiaries and must carefully monitor disbursement to the attorneys by scrutinizing
> the fee applications.   Skelton v. General Motors Corp., 860 F.2d 250, 253 (7th Cir.
> 1988), cert. denied, 493 U.S. 810, 110 S. Ct. 53, 107 L. Ed.2d 22 (1989).  A court
> should not A rubber stamp fee applications In re Cincinnati Gas & Electric Co.
> Securities Litigation, 643 F.Supp. 148, 152 (S.D. Ohio 1986).  The fact that the
> settling defendant may agree with the fee application (or, as in this case, be persuaded
> to remain silent about it) is irrelevant to the Court's analysis because the defendant
> having already paid the settlement amount, has little interest in the portion of the fund
> that the class attorney is allowed to retain. (emphasis added.)

---

deciding the amount of attorney's fees to award.       See Exhibit B for discussion of recent trend
toward linking fees to the amount of benefit actually obtained by class members.

This Court, therefore, must act as a fiduciary to the Class, carefully evaluating the basis for the fee amount. The Court should at least determine what the lodestar amount is (hours expended time hourly billing rate) and whether that bears a rational relationship to the fee requested. The Court must examine not only the amount of time, but also who did the work -- partner, associate, contract attorney, paralegal -- and whether the rates are reasonable for the locale.

        3.    <u>Pay attorneys with vouchers.</u>

Defendants' current customers paid with cash, but would receive only vouchers. If such relief has value, Class Counsel should accept vouchers as fees. A pro rata share of the total relief that is paid with vouchers should be paid to Class Counsel in the same form. Then the true value of the Settlement will be identified, and the opportunity for a secondary market can develop. C. <u>Voucher benefits revert to Defendants.</u>

Despite the claim that vouchers are worth $72,500,000, the simple fact is that Edward Jones will keep every dollar which is not claimed by current customers. In other words, the value reverts to the Defendants even though they are claiming the full benefit by asserting it entitles them to a complete release in exchange. Abuses in the class action system have been the topic of numerous court decisions. <u>Saylor v. Lindsley</u>, 456 F.2d 896, 900-01 (D.C. Cir. 1972); <u>Piabvino v. Bailey (Piabvino II)</u>, 757 F.2d 1112, 1143-44 (11th Cir. 1985), <u>cert. denied</u>, 476 U.S.1169, 106 S.Ct. 2889, 90 L.Ed.2d 976 (1986); <u>Weinberger v. Great Northern Nekoosa Corp.</u>, 925 F.2d 518 (1st Cir. 1991).

Courts have noted that the largest number of abuses occur in connection with Areversionary fund settlements which include a Aclear sailing clause and Arevertible clause.  A Arevertible clause settlement is one in which any settlement proceeds that are not claimed by class members  revert back to the defendant.  Sylvester et al. v. Cigna Corp., 369 F.Supp.2d 34 (D.Me. 2005). Such reversionary fund settlements commonly include a feature under which each class member is required to return a Aclaims form to obtain their settlement payment.  Id.  However, the defendant retains any unclaimed funds.   A Aclear sailing clause is a provision in a class action settlement in which the defendant agrees not to oppose class counsel's attorneys' fee request as long as the requested fee does not  exceed a negotiated amount.  Weinberger v. Great Northern Nekoosa Corp., 925 F.2d 518, 520 n.1 (1st Cir. 1991).

The proposed class action settlement before this Court is a reversionary fund settlement with an apparent clear-sailing provision.  Courts have noted that when a proposed settlement contains a reverter clause and/or a clear sailing clause, that the proposed settlement should be viewed with even greater suspicion than the normal class action settlement, and should not be presumed to be fair to the class members on whose behalf it was allegedly made.  International Precious Metals Corp. v. Waters, 530 U.S. 1223, 147 L. Ed. 2d 265, 120 S.Ct. 2237 (2000); Sylvester, et al. v. Cigna Corp., 369 F.Supp.2d 34 (D. Me. 2005).

D.    Fees must be paid in installments.

Class Counsel must be paid soon for the considerable amount of hard work already done. However Class Counsel should not be paid immediately when work remains to be done.   To assure

the Class, the Court, and the public that relief is being delivered accurately, completely and on time, ee payments must be staggered.  The concept has worked well in many class actions to maintain the integrity of settlement administration.

Judge Fernando Gaitan reacted to a similar suggestion by objectors in In re Wireless Telephone Federal Cost Recovery Fees Litigation, MDL 1559 (W.D. Mo.  April 20, 2004), aff'd on other grounds, 922 F.3d 922 (8th Cir. 2005) ("the Nextel case,") when he directed the parties to respond to an objector's argument that fees must be staged, rather than paid in a lump sum.  The settling parties responded by amending the proposed agreement to provide 75% upon final approval of the settlement, and 25% upon completion of all post-settlement obligations.

This common-sense concept has applied successfully in many other class actions.  In Richard Duhaime v. John Hancock Mutual Life Insurance Company, et al., 177 F.R.D. 54 (D.Mass 1997), the federal court withheld 40% of the contemplated fee for a year so the court could review the quality of representation provided by Lead Counsel and the results achieved for the class.  Similarly, in Ace Seat Cover Co., Inc., et al. v. The Pacific Life Insurance Company, Case No. 97-CI-00648 (Kenton Cir. Ct. Ky., Nov. 19, 1998), the court ordered 20% of the fees withheld until completion of the settlement agreement.  In In re: Prudential Ins. Co. of Am. Sales Practices Litig., 962 F.Supp. 450 (D.N.J. 1997), aff'd re class certification and settlement but vacated and remanded re attorneys fees, 148 F.3d 283 (3d Cir. 1998), the court ultimately ordered that 50% of the attorney's fees be withheld.  Likewise, as recently as April 12, 2007, in In Re: PNC Financial Services Group, Inc. Securities Litigation, Case No. 2:02-cv-00271-DSC (U.S.D.C. W.D. Pa. W.D. filed April 17, 2007), Judge Cercone ordered part of the class counsel's fee withheld at interest pending entry of an order

of distribution.  As noted in the order, at page 11, the change had been suggested by an objector in that case.

At least 20 percent should be withheld pending completion of the claims-submission process, so Class Counsel can report to the Court on the take rate.  Another 20 percent should be withheld pending distribution of all relief.   By staggering the fees, Class Counsel can be paid for work that has been done.  But Class Counsel cannot get the full benefit of the Settlement until their clients, the Class Members, get the full benefit of the Settlement.  Basic, prudent business practices dictate that people should not be paid fully until the job is done completely.


E.    Oversight will assure relief is delivered by claims administrator.

For the reasons described in the cases above, and to demonstrate the integrity of the Settlement administration, payments to the Claims Administrator must be staggered to show the Class, the Court and the public that the Agreement is being administered promptly, correctly and completely.   A classic and poignant example of the need for oversight appeared a few weeks ago on May 1, 2007 in Vaughn v. American Honda Motor Co., Inc., Case No. 0-04CV-421 (U.S.D.C. E.D. Tex. Marshall Division.)  The   administrator suddenly disclosed an error in that it failed to give notice to 500,000 of the 6,000,000 class members.   On May 2, 2007, the court ordered the fairness hearing to be postponed from May 30, 2007 to August 21, 2007 to allow notice to be sent, and to renew the deadlines for opting out or filing objections.  Obviously, if the error had occurred after a settlement were approved, then the court, the class members, the public, and maybe even the class counsel, might

never had known.  The result would be that the settlement would fail without a fundamental mechanism for accountability.

In the instant case, the Court must maintain jurisdiction, and at least minimal oversight, to assure that the Settlement is implemented as promised.  When the final report is delivered, the Court can order payment of the last attorney fee payment and can make the Defendants' release final.

 

F.    <u>Monitoring and reporting are essential.</u>

To have any credibility, the Settlement must require reports to establish that it is performing as promised.  The reports must be delivered to the Court so they are available to the public, including Class Members.  Progress and results must be a condition of awarding benefits to the Defendants (the Release) and Class Counsel (attorney fees) because a Settlement that benefits only Defendants and Class Counsel, but not Class members, is not fair, reasonable or adequate.  The reports need not be elaborate, but must show what efforts and results have occurred in distributing vouchers to current customers, checks to former customers, use of vouchers, and negotiation of checks.

In the <u>Nextel</u> case, Judge Gaitan directed the parties to address the objectors' concerns about administration oversight and reporting.  The parties submitted a joint response to the court's order, agreeing to modify their settlement agreement to accommodate the objectors' concerns.   For instance, their settlement agreement was changed to provide:

> Further, Class Counsel shall file a report with the Court setting forth the results of the discovery regarding Defendants_ provision of benefits to class members, together with supporting information showing its compliance with the Settlement Agreement, within fifteen (15) days following the completion of discovery.  Once the Court is satisfied with Defendants_ and Class Counsel_s performance under the Settlement Agreement, the Court

shall authorize and direct Defendants to pay the final twenty-five percent (25%) of the attorneys' fees due Class Counsel as set forth in Paragraph 13.

Upon approving the modified settlement, Judge Gaitan awarded attorneys fees to Class Counsel.[11]

### H.   Adoption of all other objections

Further, this Objector adopts all bona fide objections filed by other class members in this case and incorporates them by reference as if they appeared in full herein.

## V.   OBJECTORS' VALUE TO CLASS-ACTION PROCESS.

In their zeal to win approval of an agreement, professional class counsel and professional defense counsel often overlook or deny the importance of objectors to the class-action process. Indeed, professional class counsel and professional defense counsel may even denounce objectors' counsel as "serial objectors," or use some other pejorative epithet.[12]   However, settlements, such as this one, can be so complicated that only lawyers who have participated in many class action lawsuits can provide insightful and useful analysis, thoughtful alternatives, and a context within which to identify flaws or oversights in a settlement, and thereby assist a court in fulfilling its duty to examine the settlement as an independent and impartial neutral.

Thus, objectors provide great value to the class action process.  Without resolving the issues

---

[11]      In the Nextel case, Judge Gaitan awarded to class counsel $2,500,000 (which is 1.2% of the class recovery) in response to a request for $3,500,000 (1.7% of the class recovery.) The remaining $1,000,000 was awarded to objectors who made contributions to improving the settlement.

[12]      Such ad hominem attacks can be presumed to arise only in the absence of legitimate, persuasive and substantial responses to the merits of the objections.
*(footnote continued on next page)*

described above, the Settlement could become a complete sham and no one would be the wiser. The judicial system would have failed Class Members by requiring no mechanism for assuring that the agreed relief ever is received by the persons who should benefit. The foregoing observations are submitted to improve the Settlement, and thereafter to guarantee it will work, and to show when and how well it is completed. These improvements are developed only now because objectors offer the last opportunity to preserve the adversary process which is necessary to test the fairness of a proposed settlement.

"It is desirable to have as broad a range of participants in the fairness hearing as possible because of the risk of collusion over attorneys' fees and the terms of settlement generally. . . . It is impossible for a class to select, retain or monitor its lawyers as an individual client would." Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P., 212 F.R.D. 400, 412 (E.D. Wis. 2002). "Class counsel and defendants' counsel may reach a point where they are cooperating in an effort to consummate the settlement." Id. "Courts, too, are often inclined toward favoring the settlement, and the general atmosphere may become largely cooperative." Id.

"Thus, objectors serve as a highly useful vehicle for class members, for the court and for the public generally." Great Neck, 212 F.R.D. at 412. "From conflicting points of view come clearer thinking." Id. at 412-13. "Therefore, a lawyer for an objector who raises pertinent questions about the terms or effects, intended or unintended, of a proposed settlement renders an important service." Id. at 413. The value of objectors is even acknowledged by attorney Melvyn Weiss, one of the nation's most well-known class action attorneys, of the firm now known as Milberg Weiss and

Bershad LLP:  "Objectors are part of the class action system and, though they may be irritating from time to time, the system's been working effectively.  If objectors can come in and negotiate a benefit, that's great.  I'm not going to criticize one of the safeguards [of the class action process].   The objectors act as a check and balance to the whole procedure."  See, "Objectors to class action settlements:  Watchdogs or scum of the earth?" by Joe Frey, Insure.com website, March 23, 2000.

"The law generally does not allow good Samaritans to claim a legally enforceable reward for their deeds."  Reynolds v. Beneficial Nat. Bank, 288 F.3d 277, 288 (7th Cir. 2002) (Posner, C.J.).  "But when professionals render valuable albeit not bargained-for services in circumstances in which high transaction costs prevent negotiation and voluntary agreement, the law does allow them to claim a reasonable professional fee from the recipient of their services."  Id.  "That is the situation of objectors to a class action settlement."  Id.In other cases, objectors' counsel have been recognized where their efforts have augmented the common fund or otherwise improved a class action settlement. See, e.g., Bowling v. Pfizer, Inc., 922 F.Supp. 1261, 1285 (S.D. Ohio), aff'd, 102 F.3d 777 (6th Cir. 1996); In re Domestic Air Transp. Antitrust Litig., 148 F.R.D. 257, 359-60 (N.D.Ga. 1993).  Indeed, even in cases where objectors appeared but the settlement terms were not altered, courts have recognized their value in that their presence improved the process and assisted the court in its scrutiny of the settlement.  See County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1325-27 (2d Cir. 1990); Howes v. Atkins, 668 F.Supp. 1021, 1027 (E.D.Ky. 1987); Frankenstein v. McCrory Corp., 425 F.Supp. 762, 767 (S.D.N.Y. 1977); see also Domestic Air, 148 F.R.D. at 359. In In Re: PNC Financial Services Group, Inc. Securities Litigation, Case No. 2:02-cv-00271-DSC (U.S.D.C. W.D. Pa. W.D.), decided last month on April 12, 2007, Judge Cercone made a specific

finding "in recognition of the benefit to the Class created by the objection and the time spent thereon by Objector's Counsel . . ." and thereby awarded compensation to Objector's counsel.

Accordingly, Objector wishes to reserve the right to apply for reasonable and appropriate compensation for the valuable and crucially important services which have been provided in assisting the Court with this complex matter, preserving the adversary process needed to test the Proposed Settlement, identifying problems with the Proposed Settlement, and presenting substantial and workable solutions.

Just as objectors' counsel should be encouraged to assist the class-action process, so should individual class members be encouraged to participate. Accordingly, an incentive award is appropriate for Objector herein for their willingness to be a named party, promoting fairness, and contributing to the common welfare of the Class.

V.    CONCLUSION

These Objectors hereby adopt, subscribe to and incorporate into these Preliminary Objections all other well-taken, timely filed objections. These Objectors also request incentive awards as representatives of Class Members in this litigation.

WHEREFORE, these Objectors respectfully request that this Court:

A.    Upon proper hearing, sustain these Objections;

B.    Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

     C.     Award an incentive fee to these Objectors for their service as named representatives of Class Members in this litigation.

Dated:  June 8, 2007

                    Respectfully submitted,

                    s/ *J. Scott Kessinger*
                    J. Scott Kessinger (EDMO 67972)
                    7304 Michigan Ave.
                    St. Louis MO 63111
                    (314) 369-5115
                    Fax: (314) 754-8370

                    Kenneth E. Nelson (Mo. Bar 31993)
                    Nelson Law Firm, P.C.
                    2900 City Center Square
                    1100 Main Street
                    Kansas City MO 64105
                    (816)421-7225
                    (816-421-3339 fax
                    kennelson@mclaw.com

                    Attorneys for Objectors Rebecca Diederich,
                    Mark   Hill, Janine Bowser, Ryan Bowser,
                    Alyssa Bowser, and Colton Bows

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was sent to the following on this 8th day of June, 2007, via regular U.S. Mail and federal CM/ECF electronic delivery, to:

Matthew J. Zevin, Esq.
Stanley, Mandel & Iola, L.L.P.
550 West C Street, Suite 1600
San Diego CA 92101

Richard A. Acocelli, Esq.
Weiss & Lurie
551 Fifth Avenue, Suite 1600
New York NY 10176

David M. Harris, Esq.
Greensfeld, Hemker & Gale, P.C.
10 S. Broadway, Suite 2000
St. Louis MO 63102


*s/ J. Scott Kessinger*