UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SPAHN IRA            )  |   |
|                      )  |   |
|     Plaintiffs,      )  |   |
| v.                   )  | NO. 4:04-CV-00086 (HEA) |
|                      )  |   |
| EDWARD D. JONES & CO., *et al.*  )  |   |
|                      )  |   |
|     Defendants,      )  |   |

OBJECTIONS TO PROPOSED SETTLEMENT OF
CLASS ACTION

Now come Margot L. Kern and Denise Slomovitz, by and through the undersigned counsel, and hereby file these Objections to the proposed Settlement of this Class Action and in support thereof, state as follows:

PROOF OF MEMBERSHIP IN CLASS

Margot L. Kern and Denise Slomovitz each qualifies as a "Current Customer Class Member" as such term is defined in Section V A 11 of the Stipulation of Settlement of Class Actions (hereinafter "Settlement Agreement") because each purchased or held shares through Edward Jones in one or more of the Preferred Funds during the class period.

NOTICE OF INTENT TO APPEAR

Objectors hereby give notice that they intend to appear, through counsel, at the Settlement Hearing presently scheduled for July 20, 2007 at 10:30 a.m. CST, at the United States Courthouse, 111 S. 10th Street, St. Louis, Missouri 63102 before the Honorable Henry E. Autrey.

OBJECTIONS

The Settlement Agreement is objected to because it is not fair, reasonable or adequate for a variety of reasons. These include, but are not limited to, the following:

1. **INADEQUATE NOTICE**. The Notice of Pendency of Class Actions and Proposed Settlement ("Notice") fails to meet the standards required because it fails to give class members sufficient information about the potential settlement that could have been available. The Notice fails to inform the Class of the amount of Revenue Sharing Payments received by the Defendants from the Preferred Funds. Without this information, Class Members do not know if the settlement if fair or adequate, unfair, or grossly inadequate. Without information concerning the amount of damages suffered by the Class and to which the Class may be entitled, there is no way for a Class Member to intelligently determine whether his best course of action is to stay in the class, opt out, or object. Certain basic information concerning the amount of potential damages is necessary in order for a class member to make such a determination. The lack of this information renders the notice inadequate.

Sufficiency of notice is not a matter consigned to the court's discretion. A claim of defective notice is reviewed *de novo*. DeJulius v. New Eng. Health Care Employees. Pension Fund, 429 F. 3d 935, 942 (10th Cir. 2005). Therefore, this must be carefully scrutinized.

2. **COUPON SETTLEMENTS ARE DISFAVORED**

Coupon Settlements are generally disfavored by courts for many reasons. Unfortunately for the Class, the coupons that are offered as part of this Settlement exhibit many of the worst features and abuses that led Congress to enact the Class Action

Fairness Act of 2005, 28 U.S.C. §1712 (a) ("CAFA").  The coupons are **non-transferable**, must be used in a specific, limited period of time or they expire, and are of little or no intrinsic value.  According to the Plan of Allocation, the coupons are, at best, good for not more than a $10 discount off of the cost of an equity, bond or fixed income trade, but only if that brokerage service costs a minimum of $20.  This makes no sense.  If a brokerage service costs $10 dollars or less, a Class Member should be able to use his voucher to pay for that service.  Similarly, the Class Member should be able to aggregate coupons and use all Thirty Dollars ($30) in one year, rather than being limited to one $10 voucher per year.  This restriction only serves to benefit the defendants by giving Class Members a financial incentive, albeit a miniscule one, to make trades through the Defendants.  It does not inure to the benefit of the Class Members in any way.  Limiting the voucher to use not more than one time per year, and to brokerage services that cost more than $20, makes it even less likely that the vouchers will be used at all.  Furthermore, it should be noted that the vouchers can only be used for annual IRA and other maintenance fees, (many of which are often waived by brokerage houses), transfer out fees, or equity, bond, and fixed income trades.  Specifically excluded are trades in mutual funds and insurance product.  See <u>Notice—Credit Voucher Program</u>, p.6, § A (3) (a).  These Objectors own only mutual funds through the defendant.  Since the vouchers cannot be used for Mutual Fund trades and they may not be obligated to pay any annual fees, this "benefit" to the Class is totally illusory and of no value whatsoever to them.  By limiting the usefulness of the vouchers, the Defendants are attempting to increase their business, rather than benefiting the Class.  They are attempting to insure that members of

the Class will use the vouchers to either (a) do additional business with the Defendant beyond that which they would otherwise want to do, or (b) not use the vouchers at all.

The question of the use of Coupons in settlements was addressed by Judge Thomas A. Dickerson of Westchester County, N.Y. in his article "Consumer Class Actions and Coupon Settlements: Are Consumers Being Shortchanged?," <u>Advancing the Consumer Interest</u>, Vol. 12, No. 2, Fall/Winter 2000, in which the Judge describes the shortcomings of such settlements.

One of the most instructive cases in this area is a pre- CAFA case, <u>In re: Excess Value Insurance Coverage Litig.</u>, No. M-21-84, MDL-1339 (S.D.N.Y. Nov.2, 2005). The Court therein pointed out that under CAFA, the attorneys' fee award is to be based upon the value to members of the Class of coupons actually redeemed.  It therefore waited until the end of the redemption period to award fees.  Counsel had estimated the value of the coupon voucher program at $205 to $265 Million and requested a fee of approximately 10% of this amount. The actual value of vouchers redeemed was only $4.8 million, or only 2.4% of the original estimate.  Based upon the actual redemption, the fees requested by class counsel was **280% greater** than the actually value of the redeemed coupons.  The court  awarded counsel $2.4 Million in fees.   Similarly, this Court cannot accurately assess the value of the vouchers until after the three (3) year redemption period has expired.  Then and only then, after receipt of a report on the value of the vouchers that were actually redeemed, should the Court consider the awarding of fees.

There are many other examples of the courts rejecting coupon settlements and/or the attorneys' fees requested in those cases.  For example, in <u>In re: General Motors Corp.</u>

4

Pickup Truck Fuel Tank Products Liability Litigation, 55 F.3d 768 (3d Cir. 1995), cert. denied, 516 U.S. 824 (1996), the court rejected a settlement (seeking $4 million in attorneys fees) which offered $1,000 coupons for the purchase of a new truck.  In Maffei v. Alert Cable TV of North Carolina, 342 S.E.2d 867, 872 (N.C. Sup. 1986), class certification was denied where the 29-cent relief was worth less than the cost of postage and stationery for submitting a claim.

  Part of the difficulty in identifying the value (and proper attorneys' fees) of a coupon settlement is the uncertain and low redemption rate -- sometimes called the "take rate."  Judge Dickerson's article notes that redemption rates for food and beverage coupons consistently average between 2% and 6%.   In Bloyed v. General Motors Corp., 881 S.W.2d 422, 431 (Tex.App. -Texarkana 1994), the court rejected a settlement because the anticipated take rate -- between 10% and 46% -- was too low.  Judge Dickerson cites several cases which have solved this problem by requiring that coupons continue to be issued until an agreed value has been redeemed:  Feldman v. Quick Quality Restaurants, Inc., New York Law Journal, July 22, 1983, p. 12, col. 4 N.Y.Sup.); In re The Coca-Cola Co. Apple Juice Consumer Litigation, No. E-47054 (Ga.Sup.Ct. Fulton Co. May 4, 1998); Tepper v. Tropicana Products, Inc., No. 96-000846 (Fla. Cir. Ct. Manatee Co. Nov. 13, 1998), Muller v. Cadbury Schweppes PLC, No. 96-0148788 (Conn. Super. Ct. Waterbury Jud. Distr. June 29, 1999).  Judge Dickerson also found cases wherein cash, coupons or goods were given to charity until the agreed settlement amount was met:  Ohio Public Interest Campaign v. Fisher Foods, 546 F. Supp. 1 (N.D. Ohio 1982); Gordon v. Boden, No. 89 CH 6531 (Ill. Cir. Ct. Cook Co. July 14, 1995).  While this does not directly apply to the instant case, it provides some excellent examples

of how Courts can be creative in structuring settlements that truly benefit the Class and not the defendants.

    3.    **ATTORNEYS' FEES**.  In addition to the objections enunciated in the previous section about Coupons, the attorneys' fees request is objected to as being untimely because the Notice fails to comply with Fed R. Civ. P. 23 (h) and insufficient information is available to the Class at this time.  The Notice fails to provide the information required by Fed. R. Civ. P. 23(h) which states:

    (1)    *Motion for Award of Attorney Fees.*  A claim for an award of attorney fees and nontaxable costs must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision, at a time set by the court. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

    (2)    *Objections to Motion.*  A class member, or a party from whom payment is sought, may object to the motion.

The Notice states in relevant part:

Plaintiffs' Lead Counsel are moving the *Spahn* Court for a fee award from the cash portion of the settlement in an amount not to exceed 30% of the total face value of the cash and non-cash portions of the settlement, and accrued interest, and for reimbursement of expenses incurred in connection with the prosecution of the Class Actions in the approximate amount of $712,000. <u>Notice, p.1 "Statement of Attorneys' Fees and Costs Sought."</u>

The Notice further states that any objections to the settlement or to class counsel's attorney's fees must be filed with the Court and served on other counsel on or before June 11, 2007.

This does not comport with the requirements of Rule 23(h).  The Notice merely states that class counsel will apply for fees, in violation of Rule 23(h).  Class members whose objections to the fee are due by June 11, 2007, are forced to speculate about counsel's fee request at the time that they file their objections.  The method followed in

6

this case results in the bizarre procedural anomaly of requiring objections to the fee motion to be filed before the motion itself has been filed.

Chief Judge Garrett E. Brown, Jr. of the District of New Jersey recently agreed with objectors that Rule 23(h) requires that class members be given an opportunity to respond to class counsel's fee motion, even after the deadline for filing objections to other aspect of the settlement has passed. See *In re Insurance Brokerage Antitrust Litig.* No. 2:04-cv-5184 (D.N.J.). Objections to both the settlement and fees were due in that case on January 12, 2007. Class counsel filed their fee petition and memo in support on January 23, 2007. At the January 26, 2007 Fairness Hearing, Judge Brown refused to entertain any argument on attorney's fees, and deferred the hearing on class counsel's fees until a later date.

This notice is also deficient in that it fails to provide class counsel's lodestar. As the Third Circuit held in *In re Rite Aid Corp. Sec. Litig.*, 396 F. 3d 294, 306 (3d Cir. 2005). "the lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method, with an eye toward reducing the award." In short, simply telling class members that class counsel intends to apply for a fee of X%, or "up to" X%, without providing any lodestar data, and indicating by whom work was performed (*i.e.* Partner, Associate, summer intern, paralegal or contract attorney), when the work was performed, and the person's billing rate, how many persons attended each deposition, how much time was spent in confirmatory discovery, how much time was spent reviewing other class counsel's work, etc. really tells class members nothing, and prevents them from filing a meaningful objection to the fee request.

7

There is insufficient data in the Court's records and in the filings upon which to base a fee request. In addition, there is insufficient data in the documents which have been filed with the Court upon which a class member can make an intelligent decision as to whether the amount of fees requested are reasonable. Finally, this lack of information renders the fee request invalid because it fails to comply with Federal Rule of Civil Procedure 23(h).

Unless this Court provides class members with supplemental notice of the fee motion under Rule 23(h), they will be deprived of any meaningful opportunity to object to Class Counsel's motion for fees, which will not be filed until after the deadline for filing objections thereto.

Because of the clear defect in the Notice, a supplemental corrective notice that comports with Fed. R. Civ. P. 23(h), <u>i.e.</u> which gives class members notice of class counsel's motion for fees, is required.

In addition to this glaring procedural defect, the are two other significant reasons to object to the requested fee: (1) A 30% fee is excessive under any circumstances; and (2) The fee cannot be based upon the vouchers until such time as the Court receives a report of the actual value of the vouchers redeemed. Otherwise, the Court runs the risk of paying attorney's fees that are disproportionate to the value of the settlement to the class. See <u>Excess Value Insurance Litigation</u>, supra.

Based upon the size of the Settlement Fund, the Court should award **total fees and costs** to counsel in an amount not exceeding approximately **15.1 %** percent of the Settlement Fund. Even this sum, which would be over $19 Million, would reward Class Counsel handsomely for their services. According to the study by the consulting firm of

8

Logan, Moshman and Moore which analyzed over 1100 Common Fund cases, the average fee award for Class Action cases whose settlements were valued over $100 Million was 15.1 percent.  Stuart J. Logan, Jack Moshman and Beverly C. Moore, Jr., *Attorney Fee Awards in Common Fund Class Actions,* 24 Class Action Rep. 169 (2003). A copy of the executive summary from such study and the data on the $100 Million plus settlements is attached hereto as Exhibit A.

    4.    **PLAN OF ALLOCATION**

The Plan of Allocation suffers from several defects in addition to the problems noted above.  One relates to the Initial Allocation to Authorized Former Customers (Plan of Allocation, ¶ D 2). This entire section is so vague as to be practically useless in trying to ascertain the amount of money that will be received by Former Customers. The Plan of Allocation states that customers will receive a cash payment that "will be correlated to the present value of the Individual Credit Voucher Total." What sort of correlation will be performed and what figures and percentages will be used to compute "present value?" The remainder of this section is equally opaque: "In order to determine the amount of the cash payment that each Authorized Former Customer will receive, the amount of the Individual Credit Voucher Total (not more than $10/person per year?  $72,500,000? or some other number?) will be discounted (by how much and based upon what guidelines?) in order to arrive at an approximately equivalent cash distribution amount.  The discount calculation shall take into account (how, in what fashion, and in what amount?) the three year distribution period for the credit vouchers as well as an appropriate discount rate (appropriate to what?) as calculated by an expert to be hired by Plaintiffs' Lead Counsel…."(Questions added).

These Objectors suggests that this language is merely an obfuscatory attempt to say that the attorneys will get their fees in cash and that the remainder will be distributed to Authorized Former Customers. This is based on the following: There are, according to the Notice, approximately 1.4 million former customers who will receive an average of $17.99. This totals slightly more than $25M dollars. Class Counsel plans to ask for 30% of the total cash and non-cash components of the Settlement ($127,500,000) plus expenses. 30% of $127,500,000 equals $ 38,250,000. Adding expenses yields a total of $39 M. Therefore, if each Former Customer really receives $17.99, and Counsel gets its full fee request, the cash component of the Settlement is about $9M short. ($25 M + $39M = $64M which is more than the $55M cash component.) One way to address the problem, which seems to be suggested by the above quoted language, is to manipulate the discount and present value rates when doing the calculations of Paragraph 2 D so that the attorneys get their full fees from the cash component, and the Former Customers get the rest of the cash.

Another problem with the Plan of Allocation is the *Cy Pres* component. While the Objectors agree that any unclaimed money should be donated to an eleemosynary institution, they do not agree that it should be donated to the Edward D. Jones & Company Foundation for a variety of reasons. First of all, there is no information concerning the purposes of this Foundation in any of the materials available to the Class, so we are unaware of the goals of this organization. Secondly, money going to this organization will actually increase the amount that the defendant can claim it gave to charity, even though this is not its money. Therefore, Edward D. Jones is being rewarded for its complained-about conduct by receiving additional public relations benefits from

money that should have been distributed to the Class. Any *cy pres* distribution should be to an investor education organization, or some other securities-related charitable group.

5. **OTHER ACTIONS ENJOINED**

One of the more odious provisions of the Settlement Agreement is found in Section V (P) "Injunction." This precludes any Class Member from commencing or prosecuting any action, including arbitration, against Defendants if it was not begun before November 26, 2006. To preclude a person from bringing an action against the defendants for their conduct relating to these alleged "kickbacks" unless it was already underway as of November 26, 2006 is unfair because most Class Members were not aware of the scheme until after they received the Notice in the mail. Each person should be given the opportunity to bring his or her own action if he feels that the offered $17.99 is inadequate or that the $10/year voucher is of little use.

The Settlement Agreement further states that any action that was commenced before November 26 can be continued if, but only if, the Class Member opts-out of this Settlement in a timely fashion. This provision should be deleted for the pragmatic reasons that (1) most people do not read class action settlement agreements so that in reality, most litigants will not be aware of this provision and (2) no real harm will come to Defendants if the actions continue even without the Class Member affirmatively opting-out of this Settlement. At most, the Defendants could insist on an offset from any recovery or settlement based upon the amount that the litigant received as a member of the Class. The Court should make this modification to the Settlement Agreement and should conduct an inquiry into how many actions are currently pending so as to not prejudice the absent Class Members who may be unaware of this provision.

6. Objectors respectfully adopt and incorporate into these Objections all other well-taken, timely filed Objections that are not inconsistent with these Objections.

7. These Class member have a legally protectable interest in this litigation. That interest will be impacted by the proposed settlement agreement, and by the legal fees that are being requested.

8. These Objections, presented to the Court as a matter of right, are properly and timely filed by the Objectors.

WHEREFORE, Objectors respectfully request that this Court:

A. Upon proper hearing, sustain these Objections;

B. Continue the issue of attorneys' fees and expense reimbursement for a subsequent hearing; and

C. Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement and the requested attorneys' fees and expenses.

Respectfully submitted,

_/s/Edward F. Siegel_____
Edward F. Siegel (Ohio Bar 0012912)
27600 Chagrin Blvd. #340
Cleveland Ohio 44122
Voice: (216) 831-3424
Fax:   (216) 831-6584
e-mail: efsiegel@efs-law.com

Attorneys for Objectors

# CERTIFICATE OF SERVICE

These Objections were filed with the Court through its electronic filing system on June 11, 2007 and by such system were served on all other counsel to the proceedings.

                                           /s/ Edward F. Siegel
                                           Edward F. Siegel