# Class Action Reports™

## A REVIEW OF CLASS ACTION DECISIONS IN ALL AREAS OF THE LAW
Editor, Beverly C. Moore, Jr., J.D. Harvard University, 1970
Associate Editor, Stuart J. Logan, J.D. American University Washington College of Law, 1985

Volume 24, Number 2                   Washington, D.C.                   March-April 2003

© 2003 Class Action Reports, Inc.

## Commentary

On March 27, 2003 the Supreme Court approved and sent to Congress the latest round of amendments to Rule 23, which we previously published at 23 *Class Action Rep.* 502 (2002). Except for the unlikely event that Congress affirmatively vetoes these amendments, they will take effect on December 1, 2003.

Also moving through Congress is the "Class Action Fairness Act", which would remove most class actions from state to federal courts, which are now largely packed (especially the appeals courts) with Republican judges appointed by Reagan-Bush who generally take a jaundiced eye toward class actions in particular and plaintiffs in general. As we have noted before (see 23 *Class Action Rep.* 149 (2002)), the handful of so-called "runaway" state court class action judges (who would certify *any* class action) have already been or soon will be reversed and controlled by appellate and state supreme court decisions in such states as Alabama, Texas, Louisiana, and Illinois, whose Supreme Courts are not exactly populated by radical pro-plaintiff populist judges.

If Congress really wanted to reform class action procedures, it would require a Final Report to be filed in each federal class action detailing (1) the total money paid out by defendants, including whether those costs are paid by the defendant on top of damages or are deducted from the class fund before distribution to class members, and (2) the amount of that total recovery consumed by attorney fees and expenses. These figures would include notice and later settlement administration costs incurred after the main fees are awarded. Also included would be the amount of the claims made if it is a claims made settlement and the redemption rate and thus the cost to defendant of any coupons issued. Also before the Final Report, settlement proceedings and settlement notices should require *mandatory* best estimates of the potential trial recovery vs. the settlement amount. The latter provision in the 1995 Securities Reform Act has become a dead letter, because both sides disingenuously claim that they do not know the amount. If some range of estimates is required by the facts of a particular case, so be it. But it is important for society as well as class members to know whether their case recovers ten cents on the dollar or 100 cents. △

## Contents

| | page |
|---|---|
| Class Action Bibliography | 157 |
| Class Certification in the U.S. Circuit Courts of Appeal (2002) | 161 |
| Attorney Fee Awards in Common Fund Class Actions by Stuart J. Logan, Dr. Jack Moshman & Beverly C. Moore, Jr. | 167 |
| I. Introduction/Methodology | 167 |
| II. Chart of Recoveries and Awards by Recovery Size (Recoveries, Hours, Lodestars, Multipliers, Rates, and Percentages) | 169 |
| III. Analysis | 196 |
| IV. Citations to Cases Included | 198 |

Cite as 24 *Class Action Rep.* __ (2003).

LAW LIBRARY
MAY 27 2003

KF
.A532
9696

# ATTORNEY FEE AWARDS IN COMMON FUND CLASS ACTIONS[1]

## I. Introduction and Methodology

In 1990 we published an extensive survey of fee awards in securities and antitrust class actions.[2] That analysis included 404 cases, representing aggregate class recoveries of $6.3 billion for more than 2.5 million hours for which the fees were awarded. Since then, we have reported fee award data for individual cases in § 50 of each issue. Now we have an updated Survey which, unlike the 1990 Survey, includes consumer, labor, mass tort, and other types of class actions as well as securities and antitrust cases.[3] The new Survey is much larger—1,120 cases, representing aggregate class recoveries of about $41 billion for more than 5.7 million hours—although we do not have hours data for cases actually accounting for 60% of the total recoveries and 65% of the fees awarded, due to the present dominance of the percentage of recovery method for awarding fees, where no hours are reported.[4] The data for each case is itemized in Table 1 (pp. 169-193) and is summarized for each class recovery size range as follows:

| Recovery Range ($ millions) | No. of Cases | Aggregate Class Recovery ($ millions) | Fees & Costs as % | Atty Hrs. | Multiplier | Current Hourly Rate (in 2/03 $) |
|---|---|---|---|---|---|---|
| < $1m | 128 | 69,272 | 31.4 | 95,427 | 1.10 | 300.22 |
| $1 < $2m | 123 | 171,466 | 31.9 | 105,740 | 1.25 | 356.27 |
| $2 < $3m | 98 | 232,727 | 30.5 | 103,495 | 1.63 | 489.90 |
| $3 < $5m | 142 | 542,235 | 31.6 | 274,591 | 1.89 | 498.78 |
| $5 < $10m | 217 | 1,478,543 | 30.4 | 568,985 | 1.89 | 513.39 |
| $10 < $20m | 153 | 2,171,199 | 27.9 | 678,910 | 1.97 | 554.53 |
| $20 < $30m | 65 | 1,586,256 | 25.8 | 353,296 | 1.90 | 560.06 |
| $30 < $50m | 67 | 2,464,818 | 24.8 | 495,482 | 2.32 | 679.71 |
| $50 < $75m | 37 | 2,861,715 | 23.6 | 697,429 | 2.75 | 803.40 |
| $75 < $100m | 26 | 2,232,434 | 20.9 | 450,753 | 3.93 | 1,182.15 |
| ≥ $100m | 64 | 28,424,575 | 15.1 | 1,940,902 | 4.50 | 1,396.21 |
| All Cases | 1,120 | 41,574,841 | 18.4 | 5,760,011 | 3.89 | 1,192.43 |

As can be seen, for every dollar recovered in a common fund class action, 18.4 cents goes to the attorneys and for other costs (expert fees, out-of-pocket expenses, etc.)[5] and 81.6 cents goes to the class members, which should seem to be a pretty good deal for class members relative to paying, say, 40% to an individual personal injury lawyer. A comparison with our 1990 study, limited to antitrust and securities class actions, shows the following:

---

[1] Case information compiled and analyzed by Stuart J. Logan, Associate Editor, and Beverly C. Moore, Jr., Editor-in-Chief. Database compiled by statistician Dr. Jack Moshman, Moshman Associates, Inc., Bethesda, Md.

[2] 13 Class Action Rep. 249 (1990).

[3] To the left of each case name in the main Table 1 is a symbol indicating the type of case: S = securities, A = antitrust, C = consumer, M = mass tort, T = taxpayer, L = labor/wage/pension, E = employment discrimination, EN = environmental pollution, CP = civil rights, W = social welfare/entitlements, U = utilities, D = derivative, and G = government regulation. The data for these particular types of cases are separately broken down later in Table 2 (see p. 196).

[4] This Survey does not cover any awards before approximately 1974, when fees were usually based on a percentage of the recovery, and data on attorney hours and hourly rates were typically unavailable. Some of these pre-Lindy awards are discussed at 5 Class Action Rep. 334-344, 472-480 (1978).

[5] Total costs may be modestly understated to the extent that in some cases we do not have full information on post-settlement/judgment notice and claims administration costs later deducted from the common fund prior to its disbursement to class members. In some other cases for which this data is lacking, these expenses are paid by the defendants on top of the settlement fund.

|  | No. of Cases | Aggregate Class Recovery ($ millions) | Fees & Costs as % | Atty Hrs. | Multiplier | Current Hourly Rate (in 2/03 $) |
|---|---|---|---|---|---|---|
| 1990 Sample | 404 | 6,322,658 | 14.8 | 2,515,642 | 1.83 | 494.26 |
| 2003 Sample | 1,120 | 41,574,841 | 18.4 | 5,760,011 | 3.89 | 1,192.43 |

In our 1990 Study, we noted that average hourly rates, multipliers, and fee percentages had changed little from that reported in our previous 1980 Study.[6] In contrast, those numbers have changed significantly from 1990 to 2003. Notably (1) the average hourly rate has increased from $494.26 in 1990 (inflated to 2003 dollars) to $1,192.43 in 2003; and (2) the average multiplier has increased from 1.83 in 1990 to 3.89 in 2003. But these increases are mainly due to the addition of new "mega" cases with very high class recoveries. For example, in the 1990 Study there were only 12 cases with recoveries of $75 million or greater (and containing hourly data). In the 2003 Study, there are 55 such cases. Because the data show that, on average, higher recoveries result in higher hourly rates and higher multipliers, these new large recovery cases explain the multiplier and hourly rate increases from 1990 to 2003.

Similarly, the average percentage of recovery consumed by fees and expenses has also increased, from 14.8 in 1990 to 18.4 in 2003. This increase is explained by the increasing ascendancy of the percentage-of-recovery method of awarding fees over the more stringent lodestar/multiplier method. For the 471 cases that used the percentage method, fees and costs consumed an average of 20.9% of recoveries. For the 649 non-percentage (or "mixed" percentage/multiplier) fee cases, fees and costs consumed an average of 14.5% of recoveries. Even in the larger recovery ranges ($75 million or higher), courts have awarded fees of at least 25% in 25 of those 90 cases.

The 2003 Survey does confirm what the 1980 and 1990 Surveys found—that hourly rates and multipliers tend on average to increase with the size of the class recovery (though there is extreme variability in individual cases). The percentage of the class recovery consumed by attorney fees and costs is remarkably constant for recoveries under $10 million (averaging from 30.4% to 31.9%) and then declines gradually from 27.9% to 23.6% for recoveries between $10 million and $75 million. Even at recoveries in the $75 million to $100 million Group (20.9%) and the over $100 million Group (15.1%), the average percentages are significantly higher than those in the highest range in the 1990 study—10.1% for the over $50 million Group.

That the overall fee percentage is 15.1% for recoveries in Group 1 ($100 million and over), as compared with the 18.4% figure for the entire sample, illustrates how a relatively few "big cases" dominate the entire sample. Just 13 cases in which recoveries were over $400 million account for nearly half of the total $1.6 billion recovered in all 1,120 cases and 36% of the total fees awarded.

Care has been taken to include all fee awards we have been able to find and analyze thus far, those involving low as well as high percentages, hourly rates, and multipliers. This is not a "selective" survey aimed at pleasing either plaintiffs or defendants. Table 1 follows and combines all of the cases into a single sample ordered by the size of the class recovery. A more detailed explanation of the data in Table 1 follows.

---

[6] 6 Class Action Rep. 82 (1980).