**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JUN 1 1 2007

U. S. DISTRICT COURT
E. DISTRICT OF MO.

| | |
|---|---|
| JOHN M. SPAHN, IRA, On Behalf of Himself and all Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EDWARD D. JONES & CO. L.P., THE JONES FINANCIAL COMPANIES, L.L.L.P., EDJ HOLDING COMPANY, INC., JOHN W. BACHMANN, DOUGLAS E. HILL, MICHAEL R. HOLMES, RICHIE L. MALONE, STEVEN NOVIK, DARRYL L. POPE, and ROBERT VIRGIL JR.,<br><br>Defendants. | CLASS ACTION<br><br>Case No.: 04:04CV00086 HEA<br><br>Consolidated with:<br><br>4:04CV00118CAS<br>4:04CV00255DJS<br>4:04CV00282DJS<br>4:04CV00466HEA<br>4:04CV00467HEA |

## OBJECTION TO PROPOSED SETTLEMENT

Comes now, Shirley M. Barnes (hereinafter "Objector"), by and through her undersigned counsel of record, and hereby files this Objection. In support thereof, Objector states as follows:

The Proposed Settlement is intended to benefit all Class Members consistent with the Federal Rules of Civil Procedure and applicable law. Thus, any such settlement must be fair, adequate and reasonable to those Class Members.

The Proposed Settlement is not fair, adequate, or reasonable for at least the following reasons:

1. Objector has been identified as a member of the defined Settlement Class during the applicable period (see Exhibit A).

1

2.  The Court has preliminarily approved an agreement between the Defendant and class representatives to settle this matter (the "Proposed Settlement").

3.  Objector has become sufficiently acquainted with the Proposed Settlement and believes that the Proposed Settlement is not fair, adequate, nor reasonable, all of which criteria are legal standards to be applied by this Court in determining whether to approve the Proposed Settlement as presented to the Court by adverse litigating parties. It is the duty of this Court to assure itself through rigorous analysis as to whether the legal criteria are met before granting final approval of the Proposed Settlement.

4.  Objector, through her undersigned counsel, now enters her appearance in this cause to participate in further proceedings in this Court and to prosecute this action to the end purpose that any settlement or resolution proposed or approved by the Court is, in all respects fair, adequate and reasonable.

5.  On the basis of the information ascertained from the Proposed Settlement conditionally approved by the Court, Objector identifies the following specific deficiencies that should be addressed and corrected in order for any settlement to be fair and reasonable to the Settlement Class Members and to provide adequate consideration for the general release of their substantial claims against Defendants:

A.  **Relief is Disproportionate to Harm Suffered by Class Members**

Both the vouchers and cash payments offered to class members are inadequate in that the relief offered is disproportionate to the harm suffered by the class. Class counsel has failed to provide an analysis of damages. Consequently, class members have no way of knowing whether the proposed relief is adequate compensation for harm suffered at the hand of Defendants.

2

Accordingly, class members do not possess sufficient information to determine if they should remain in the class or opt out. At the present time, the settling parties have presented no evidence that class members will receive value under the settlement commensurate with the value of their underlying claims. *See* C.Wright, A.Miller, & M.Kane, Federal Practice & Procedure Sec. 1797.1, at 392 (1986) (settling parties must offer evidence to demonstrate fairness and adequacy of settlement).

**B.     Requested Attorneys' Fees are Excessive**

Attorneys for the class have indicated in the Notice that they intend to seek fees in an amount equal to 30% of the combined cash and voucher settlement components. Additionally, class counsel seeks reimbursement of $712,000.00 in costs.

While this Circuit has, in the past, often utilized the "percentage of fund" in favor of the "lodestar" approach, *see, e.g. In re Chrysler Motors Corp. Overnight Eval. Program Litig.,* 736 F. Supp. 1007, 1016 (8th Cir. 1990), counsel's lodestar remains an important tool for cross-checking contingency fees in order to avoid an inappropriate windfall.

Consideration of fee petitions submitted by counsel representing a plaintiff class requires the utmost judicial scrutiny and discretion. It is at this stage that counsel for the class is transformed from the champion of the class to a competing claimant against the fund intended to recompense the wrong suffered by the class. REPORT OF THE THIRD CIRCUIT TASK FORCE, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 251 (Oct. 8, 1985) (hereinafter "*Task Force Report*").

3

In essence, the district court assumes the fiduciary role for the class that its counsel filled during the litigation, but vacated upon submission of the fee petition. *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 253 (7th Cir. 1988), *cert. denied*, 493 U.S. 810 (1989); *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1099 (2d Cir. 1977) ("*Grinnell II*"); *Task Force Report* at 255. Because objections by class members are rare and defendants, having made their contribution to the settlement, are uninterested in the distribution, the district court must act with moderation and a jealous regard for the rights of the class members in determining a reasonable attorney fee. *See, e.g., Rothfarb v. Hambrecht*, 649 F. Supp. 183, 237 (N.D. Cal. 1986) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 469 (2d Cir. 1974) ("*Grinnell I*")); Deborah A. Klar, *Attorney's Fees in Securities Class Actions: Recent Developments Under the Common Fund Doctrine*, SECURITIES LITIGATION (1991); *Task Force Report* at 251; *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1325 (C.D. Cal. 1977) (not only must the courts avoid awarding windfall fees, but they must avoid every appearance of having done so).

i. **The need to cross-check a contingent fee against counsel's lodestar is particularly important in a "mega-fund" case such as the one at bar.**

Notably, this is not a typical class action. Rather, it is a "*mega-fund*" case. See *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 106 F. Supp. 2d 721, 735-36 (D.N.J. 2000) (noting that percentage awards in mega-fund cases range from 4.1 percent to 17.92 percent of fund and awarding 4.8 percent of fund.); *see also In re Baldwin-United Corp. Litig.*, 1986 WL 12195 (S.D.N.Y.) (attorneys' fees constituted 4.1% of the $183.8 million

4

settlement fund); *In re Washington Public Power Supply Sys. Sec. Litig.*, 779 F.Supp. 1063 (D.Ariz.1990); *In re Corrugated Container Antitrust Litig.*, 1983-2 Trade Cas (CCH) ¶ 65,628 (S.D.Tex. September 1, 1983) (awarding fee of 9 percent of $366, million fund); *In re Agent Orange Prod. Liab. Litig.*, 611 F.Supp. 1296 (E.D.N.Y.1985), (fee award constituted 5.5 percent fee of the $180 million settlement fund); *In re MGM Grand Hotel Fire Litig.*, 660 F.Supp. 522 (D.Nev.1987), (fee award constituted 7 percent fee of the $205 million settlement fund.); *In re Washington Public Power Supply Sys. Sec. Litig. ("WPSS")*, 19 F.3d 1291, 1297, 1301 (9th Cir.1994) ($687 million settlement fund; 4.658 percent fee award reversed and remanded because district court abused its discretion in *refusing* to award a risk multiplier; court indicated that a greater award was appropriate); *In re Folding Carton Antitrust Litig.*, 84 F.R.D. 245 (N.D.Ill.1979) ($200 million settlement fund; 6.6 percent fee award); *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998) (awarding fees and expenses of 14.4 percent of the common fund); *Bowling v. Pfizer*, 922 F.Supp. 1261, 1283-84 (S.D. Ohio 1996) ($102.5 million settlement fund; 10 percent fee award plus separate award of up to 10 percent of all future contributions to settlement fund); *Sioux Nation of Indians v. United States*, 227 Ct.Cl. 404, 650 F.2d 244, 247 (1981) ($106 million settlement fund; 10 percent fee award); *Stender v. Lucky Stores, Inc.*, No. 88-cv-1467 (N.D.Cal. Apr. 20, 1994) ($107 million settlement; fees *and costs* consumed 12.8% of recovery) (reported in 18 *Class Action Reports* 338 (May-June 1995)); *In re*

*Shell Oil Refinery,* 155 F.R.D. 552 (E.D.La.1993) ($170 million settlement fund; 17.92 percent fee award).

Accordingly, a "*declining percentage*" approach is certainly warranted here. The rationale for this approach is to account for economies of scale: "*In many instances the increase [in fund size] is merely a factor of the size of the class and has no direct relationship to the efforts of counsel.*" *See, In re Nasdaq,* 187 F.R.D. at 486.

The fee sought by lead counsel far exceeds what is customarily awarded when applying the "percentage of fund" method in cases of this magnitude.[1]

---

[1] "While 25 percent may be the benchmark for cases involving settlements in the range of one to fifty million dollars, *see e.g., Greene v. Emersons, Ltd.,* [1987 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 93,263 (S.D.N.Y.1987) (awarding fees of one third of the $1,175,000 settlement fund); *Friedlander v. Barnes,* [1986-87 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 92,754 (S.D.N.Y.1986) (awarding attorneys' fees representing 30% of $1,025,000 settlement recovery); Cumberland Farms, Inc. v. Browning-Ferris Indus., 1990 WL 69019 (E.D.Pa. May 23, 1990) (awarding fees of 25 percent of $50 million class recovery); 1 Alba Conte. Attorney Fee Awards, § 2.08 at 50-51 (2d ed.1993) (noting that where class recoveries have been in the $1 to 50 million range, the median fee award is 25 percent.), it is not the benchmark for megafund cases in which settlements over $100 million are achieved. Indeed, the expectation is that 'absent unusual circumstances, the percentage will decrease as the size of the fund increases.' Third Circuit Report, 108 F.R.D. at 256 and n. 63 (pointing out that Agent Orange plaintiffs' class counsel collected over ten million dollars in fees, yet that amounted to less than six percent of the settlement fund). Newberg's Attorney Fee Awards, which analyzes the range of awards in common fund cases, emphasizes that when a common fund is extraordinarily large, as is the instant case, the application of a benchmark or standard percentage may result in a fee that is unreasonably large for the benefits conferred. *See* Herbert P. Newberg, Attorney Fee Awards, § 2.09. In recognition of this problem, courts reduce percentage awards as the size of the recovery increases. *See In re Prudential Ins. Co. of America Sales Practices Litig.,* 962 F.Supp. 572, 585 (D.N.J.1997), reversed and remanded 148 F.3d 283 (3d Cir.1998) (noting that percentage awards in megafund cases range from 4.1 percent to 17.92 percent of fund); *Duhaime v. John Hancock Mut. Life Ins.,* 989 F.Supp. 375 (D.Mass.1997) (applying 9.3 percent to a common fund over $300 million). Where the fund is unusually large, some courts have used a 'sliding scale, with the percentage decreasing as the magnitude of the fund increased ...' Manual for Complex Litigation, Third, § 24.12 at 189, Federal Judicial Center (1995) (citations omitted). *See e.g., Branch v. FDIC,* 1998 WL 151249 (March 24, 1998) (applying 14 percent up to $22 million; 12 percent of the next $10 million, and 5 percent over and above $32 million). This sliding scale is explained in part by economies of scale. See Third Circuit Report, 108 F.R.D. at 256. It is generally not 150 times more difficult to prepare, try and settle a $150 million case than it is to try a $1 million case. As noted in *In re First Fidelity Securities Litigation,* 750 F.Supp. 160 (D.N.J.1990), '[t]here is considerable merit to reducing the percentage as the size of the fund increases. In many instances the increase is merely a factor of the size of the class and has no direct relationship to the efforts of counsel.' *Id.,* at 164 n. 1. Thus where fund recoveries range from $51-$75 million, fee awards usually fall in the 13-20 percent range. See Newberg, at § 2.09; William J. Lynk, 'The Courts and the Plaintiff's Bar: Awarding the Attorney's Fee in Class Action Litigation," 23 J. Legal Stud. 185, 201 (1994). In cases where a class recovers more than $75-$200 million, courts weigh the economies of scale inherent in class actions in fixing a percentage to yield a

6

ii. **It is not an abuse of discretion for this Court to apply the lodestar method simply because class counsel prefer that the Court follow the percentage of recovery approach.**

> The only fee award that could be considered reasonable under the circumstances is one that compensates class counsel for work that benefited the class without negating such benefit in the process or creating a windfall for counsel. *Detroit v. Grinnell Corp*, 560 F.2d 1093, 1098 (2nd Cir. 1977) ("Courts and commentators have repeatedly warned that too little judicial regard for the interests of the benefited class can easily result in lesser recoveries for intended beneficiaries because of massive fees for enterprising attorneys."); *In re Superior Beverage/Glass Container*, 133 F.R.D. 119, 126 (N.D. Ill. 1990) (in no case should a fee award consume an untoward portion of the class recovery; what is left for the class after fees have been awarded is always of paramount consideration) ("*Superior Beverage*"); *see also Grunin v. Intl. House of Pancakes*, 513 F.2d 114, 127 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975) (the primary concern is to ensure that such awards reasonably compensate the attorneys for their services, and are not excessive, arbitrary or detrimental to the class).

iii. **Even if the Court employs the percentage of recovery method to compute fees, it should cross check the reasonableness of such an award under the lodestar/multiplier method.**

---

recovery of reasonable fees. See Newberg, at § 2.09. Accordingly, fees in the range of 6-10 percent and even lower are common in megafund cases.'" *In re Nasdaq*, 187 F.R.D. at 486

7

To avoid a several million-dollar windfall to counsel and confirm the overall reasonableness of any percentage of recovery award, the court must necessarily employ the lodestar approach to determine attorney fees.[2] Indeed, "District Courts often use the lodestar method as a cross-check on the percentage method in order to ensure a fair and reasonable result."[3] *See, e.g., Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1301 (W.D. Wash. 2001). *See also Coordinated Pretrial,* 109 F.3d at 607; *Fischel v. Equitable Life Assurance Society*, 307 F.3d 997, 1007 (9th Cir. 2002). In order to ensure that all necessary data is before the court, attorneys are generally required to submit detailed affidavits which itemize and explain their fee claims. Also, many courts have required that an evidentiary hearing be held at which each claimant is subject to cross-examination. *Grunin v. Intl. House of Pancakes,* 513 F.2d 114, 127 (8th Cir. 1975). This Court should apply such scrutiny to this case in order to ensure that the compensation of damaged class members is not improperly reduced by an unreasonable windfall for class counsel.

---

[2] When using the percentage-of-the-fund approach, although there is a 25 percent benchmark, that rate may be unreasonable in some cases. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047-48 (9th Cir. 2002); *see also WPPSS,* 19 F.3d at 1297-98. "It is not difficult to demonstrate why courts cannot rationally apply any particular percentage -- whether 13.6 percent, 25 percent or any other number -- in the abstract, without reference to all the circumstances of the case." *WPPSS,* 19 F.3d at 1298.

[3] "Where such [a lodestar] investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted." *Vizcaino,* 290 F.3d at 1050.

8

### iv. Prior governmental action militates against awarding a large fee from the common fund in this case.

In the instant case, as in *City of Detroit, et al. v. Grinnell*, 560 F.2d 1093, 1101 (2nd Cir. 1977), plaintiffs' counsel were afforded the benefit of a complaint already filed and scores of suits arising out of the government's prior action. There, as here, counsel "who had the benefit of access to the prior action's entire document repository, was definitely not 'starting from scratch in this litigation.'" (quoting from *City of Detroit v. Grinnell*, 1976-1 Trade Cases ¶60,913 at 68,981). Plaintiffs' counsel here were, similarly, significantly aided and supported by the existence of the actions by the S.E.C. and N.A.S.D., as well as activity by the States of Missouri and California (See Exhibit B).

The synergistic combination of multiple civil actions in the instant situation renders the mechanical application of any lodestar enhancement improper without express consideration of the effect of those other actions. The other civil actions considerably reduced the contingency risk for plaintiffs' counsel. When the government is involved, the benefits conferred by counsel are of necessity lessened. *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 53-54 (2d Cir. 2000) (A 4% fee awarded because class counsel received the benefit of work done by federal agencies during previous criminal and civil actions); *Wechsler v. Southeastern Properties, Inc.*, 506 F.2d 631, 635-36 (2d Cir. 1974) (no fees awarded to class counsel where state's attorney general brought the action resulting in benefit to plaintiff class, and class counsel had not

9

helped initiation of attorney general proceedings); *In re Quantum Health Resources, Inc. Securities Litigation*, 962 F.Supp. 1254, 1259 (C.D. Cal. 1997) (10% fee awarded because material allegations in class complaint were supported by governmental investigations); *Donnarumma v. Barracuda Tanker Corp.*, 79 F.R.D. 455, 467-68 (C.D. Cal. 1978) (15% fee awarded because Coast Guard had investigated, thereby reducing risk and amount of work taken on by class counsel).

## CONCLUSION

This Court has a duty to absent class members to carefully scrutinize the proposed settlement with a jealous regard for their interests. The requested fee equal to thirty percent of the settlement fund is excessive in light of both the magnitude of the case and the preceding government actions. The Court should carefully scrutinize the fee request to avoid an unconscionable windfall to counsel and ensure that the recovery is properly allocated to class members. Finally, Objector adopts, and incorporates herein by reference, all *bona fide* objections filed by other objectors in this case. Objector hereby reserves the right to amend and refine her objections as more information is made available.

Respectfully submitted this 7th day of June, 2007.

**LAW OFFICE OF JOHN W. DAVIS**

by: _____
John W. Davis
4446 Eastgate Mall, Second Floor
San Diego, CA 92121
Telephone: (858) 812-2976
Facsimile: (858) 658-0072

10