**BLAKE MUIR HARPER** graduated from the University of Utah College of Law in 1981, where he served as Executive Editor of the Utah Law Review and received an award in a national legal writing competition. He then served as law clerk to the Honorable David K. Winder, U.S. District Judge for the District of Utah. Mr. Harper has directed as lead class counsel prosecution of numerous securities and consumer actions throughout the United States, including *Stenovich v. Eccles* (3d Dist. Ct. Utah) (settled for $30 million); *In re L.A. Gear Sec. Litig.* (C.D. Cal.) (settled for more than $50 million); *In re Genentech Sec. Litig.* (N.D. Cal.) (settled for $29 million); *In re Bonneville Pacific Sec. Litig.* (D. Utah) (settled for $25 million); *In re Network Equipment Technologies Sec. Litig.* (N.D. Cal.) (settled for cash and securities valued in excess of $23 million); *Cytryn v. Cook* (N.D. Cal.) (settled for $19.5 million). Mr. Harper was also one of the trial counsel in *In re Apple Computer Sec. Litig.*, No. C-84-20198(A)-JW (N.D. Cal.), where in 1991 a jury verdict was obtained against two corporate officers in a case where damages exceeded $100 million. Most recently, he played a significant role in prosecuting *In re Broadcom Sec. Litig.*, No. SACV 01-275 (GLT) (MLGx) (C.D. Cal.), settled in June 2005 for $150 million. He has taught at PLI and Lorman seminars on topics of accountant liability and civil procedure.

**KIRK B. HULETT** graduated from the University of California San Diego in 1978. In 1983, Mr. Hulett graduated cum laude from the University of San Diego School of Law where he was Managing Editor of the University of San Diego Law Reporter. Since 1984, Mr. Hulett has specialized in the representation of plaintiffs in securities and consumer class actions, participating as lead or co-lead counsel in dozens of class actions throughout the country, including *Lincoln Savings* (D. Az.); *Media Vision* (N.D. Cal.); *HomeFed* (S.D. Cal.); and *Gensia Pharmaceuticals* (S.D. Cal.). After a nearly six-month trial in *Lincoln Savings* case, the jury returned a verdict exceeding $250 million. Mr. Hulett was co-lead trial counsel in a multimillion dollar auditor liability action against PriceWaterhouseCoopers, LLP and is presently lead counsel on behalf of a class against Edward Jones & Company, regarding over $350 million in alleged kick-backs. He recently testified before the California Assembly Business and Professions Committee on the topic of potential regulatory and auditor liability reforms following the Enron financial collapse.

**DENNIS STEWART** received his Bachelor of Arts from the College of the Holy Cross in 1976 and his Juris Doctor with distinction from Hofstra University in 1981, where he was a member of the Law Review. Between 1981 and 1985 he worked for a major San Diego law firm and engaged in general commercial litigation practice. Between 1985 and 1988, Mr. Stewart served as a trial attorney with the Antitrust Division of the United States Department of Justice. While at the Antitrust Division, Mr. Stewart participated in investigations and trials involving alleged criminal violations of the antitrust and related laws and was lead counsel in the successful prosecution through trial of *United States v. Saft America, Inc.*, No. CD88-99(DRD) (D.N.J.).

Mr. Stewart has served as lead counsel, principal counsel and/or trial counsel in numerous antitrust, consumer and securities cases. He was lead trial counsel in *Knapp v. Ernst & Whinney*, 90 F.3d 1431 (9th Cir. 1996), in which a plaintiffs' verdict was returned in a Rule 10b-5 securities fraud class action, and *Hall v. NCAA*, No. 94-2392-KHV (D. Kan.), in which a plaintiffs' verdict of $30 million was returned in an antitrust class action. He also served as co-lead trial counsel in *In re Airline Ticket Commission Antitrust Litigation*, MDL 1058, an antitrust class action which settled for $85 million, *In re Contact Lens Antitrust Litigation*, which settled for $90 million, and in *In re Lifescan Consumer Litigation*, a consumer class action which settled for $45 million. Most recently, he was trial counsel in *Pauma Band of*

*Luiseño Mission Indians v. Caesars Entertainment, Inc., et al.* in which the jury returned a plaintiff's for $30 million dollars. He has also served as co-lead counsel in the Carbon Fiber Antitrust Litigation which settled for $69 million and in the *In re Currency Conversion Litigation*, and trial counsel in *Schwartz v. Visa*. He also played a significant role in prosecuting *In re Broadcom Securities Litigation*, No. SACV 01-275 (GLT) (MLGx ) (C.D. Cal.), settled for $150 million. He is a member of the California and New York bars and continues to specialize in antitrust, consumer and other complex litigation. He is a member of the Executive Committee of the State Bar of California Antirust and Unfair Competition Section and of the Association of Business Trial Lawyers and has lectured on antitrust and class action topics for the Practicing Law Institute, The American Bar Association Antitrust Section and the California State Bar Antitrust and Trade Regulation Section.

* * * *

**BRIDGET FOGARTY GRAMME** graduated from the University of San Diego School of Law where she received an award for Outstanding Contribution to the California Regulatory Law Reporter for her report on the Medical Board of California. Ms. Gramme graduated *cum laude* from the University of San Diego and received her Bachelor of Arts in International Relations and Latino Studies. Prior to attaining her Law Degree, she worked at the U.S. Department of State in Washington, DC where she coordinated the Northern Ireland Vital Voices: Women in Democracy initiative for the International Women's Issues office. She is a member of the California Bar, the San Diego County Bar Association, and the Louis M. Welch American Inns of Court. She is also a volunteer attorney for Casa Cornelia Law Center.

**JENNIFER A. KAGAN** graduated *cum laude* from New York University with a Bachelor of Arts in psychology. She graduated *cum laude* from the University of San Diego School of Law and was admitted to the Order of the Coif. Ms. Kagan served as Senior Executive Editor for the San Diego Law Review and worked as an intern at the United States District Court for the Southern District of California and the San Diego City Attorney's Office. She is a member of the California Bar.

**RANDALL R. SJOBLOM** graduated *cum laude* from the University of Utah with an Honors Bachelor of Arts in History. While completing his undergraduate degree, he worked as a legal investigator for the Salt Lake firm Henriksen & Henriksen, P.C. Mr. Sjoblom graduated *cum laude* from the University of San Diego School of Law and was admitted to the Order of the Coif. Mr. Sjoblom served as the Research Editor for the San Diego Law Review and as an intern for the Center for Public Interest Law, monitoring the California Board of Accountancy. Mr. Sjoblom has been published in the San Diego Law Review and the California Regulatory Law Reporter. After law school, he worked as a law clerk to the Honorable James F. Stiven, U.S. Magistrate Judge for the Southern District of California. Mr. Sjoblom is a member of the California Bar, the American Bar Association, the San Diego County Bar Association, the Louis M. Welch American Inns of Court, and the J. Reuben Clark Law Society.

**SARAH P. WEBER** graduated *cum laude* from the University of San Diego School of Law. There, she was honored as the Outstanding Contributor to the California Regulatory Law Reporter for her reporting on the activities of the California Board of Accountancy and the California Department of Corporations. Ms. Weber also served as an extern to Presiding Justice Judith McConnell at the California Court of Appeal, 4th Appellate District Division One. She

6

received her Bachelors of Science with an emphasis in Finance from Northern Arizona University in Flagstaff. Prior to obtaining her law degree, Ms. Weber was a Registered Securities Representative and Investment Advisor. She is a member of the California Bar and the Lawyer's Club of San Diego.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| JOHN M. SPAHN, IRA, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>EDWARD D. JONES & CO., L.P., JOHN W. BACHMANN, DOUGLAS E. HILL, MICHAEL R. HOLMES, RICHIE L. MALONE, STEVEN NOVIK, DARRYL L. POPE and ROBERT VIRGIL JR.,<br><br>Defendants. | Case No. 4 04CV00086HEA<br><br>Consolidated Case Nos.<br><br>4:04-CV-00118 CAS<br>4:04-CV-00255 DJS<br>4:04-CV-00282 DJS<br>4:04-CV-00466 HEA<br>4:04-CV-00467 HEA<br><br>**CLASS ACTION** |
| RACHEL M. ENRIQUEZ, Custodian for Diego Enriquez under IL/UTMA, On Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>EDWARD D. JONES & CO., L.P., et al.,<br><br>Defendants. | Cause No. 4 06CV00547HEA<br><br><br><br><br>Cause No. 042-00126A |

## DECLARATION OF ROBERT D. BLITZ FILED ON BEHALF OF BLITZ BARDGETT & DEUTSCH, LC, IN SUPPORT OF APPLICATION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

I, Robert D. Blitz, being duly sworn, depose and say:

     1.     I am a partner of the law firm of Blitz, Bardgett & Deutsch, L.C., one of the Counsel for plaintiffs in this matter. I am submitting this Affidavit in support of all Plaintiffs' Counsel's (including my firm's) application for an award of attorneys' fees and reimbursement of expenses provided in connection with the services rendered to plaintiffs by my firm in the course of this litigation.

     2.     I am an attorney in good standing and duly licensed and admitted to the Bar of Missouri. The testimony set forth in this Declaration is based on information and belief and records maintained in the ordinary course of business by the firm.

     3.     This firm is counsel of record for plaintiff, Rachel M. Enriquez, on behalf of herself and all others similarly situated. As one of the counsel for the plaintiffs, my firm performed services on this matter as follows: factual and legal research, drafting and filing of pleadings, telephone calls, correspondence and meetings with co-counsel, attending and arguing at hearings, negotiations on behalf of plaintiff.

     4.     I attach, as Exhibit I, a detailed summary indicating the amount of time spent by each attorney and paralegal of my firm who worked on this litigation and the lodestar calculation based on my firm's historical billing rates (the rates for each timekeeper that were in effect during this litigation, and when the work was performed). The schedule was prepared from computerized records kept by my firm in the ordinary course of its business. Time expended in preparing this application for fees and reimbursement of expenses has not been included in this lodestar.

     5.     From the inception of the case through August 31, 2007, my firm expended a total of 1,042.50 hours on behalf of the plaintiffs. The total lodestar amount for these hours based on my firm's historical and regular hourly billing rates is $276,048.50.

6.      In addition, as detailed in Exhibit 2, my firm expended a total of $20,073.80 in expenses in connection with the prosecution of this litigation.  None of these expenses have been reimbursed to date.

7.      My firm recorded these expenses as they were incurred, and they are reflected in its computerized bookkeeping records which were created from invoices, receipts and other proofs of the charges and payments.

8.      Thus, for this litigation, the total historical lodestar of my firm is $276,048.50 and we incurred expenses of $20,073.80.

I declare under penalty of perjury under the laws of the State of Missouri that the foregoing is true and correct.  Executed this 5th day of October, 2007, in St. Louis, Missouri.

Robert D. Blitz

**EXHIBIT 1**

| ATTORNEY | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | Cumulative Hours | Billing Rate | Cumulative Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|---|
| John E. Bardgett | | | | | | | | | 3.40 | 300.00 | 1,020.00 |
| Robert D. Blitz | | | | | | | | | 336.50 | 375.00 | 126,187.50 |
| R. Thomas Avery | | | | | | | | | 3.50 | 275.00 | 962.50 |
| Christopher O. Bauman | | | | | | | | | 579.4 | 235.00 | 136,159.00 |
| Ellen W. Dunne | | | | | | | | | 20.10 | 23.00 | 4,723.5 |
| Jason K. Turk | | | | | | | | | .20 | 190.00 | 38.00 |
| Andrea L. Essmyer, paralegal | | | | | | | | | 95.70 | 70.00 | 6,699.00 |
| Cindy L. Stephens, paralegal | | | | | | | | | 3.70 | 70.00 | 259.00 |
| **TOTAL** | | | | | | | | | 1,042.50 | | 276,048.50 |

**EXHIBIT 2**

| Description | Cumulative Expenses |
|---|---|
| Assessment Payment | $0.00 |
| Commercial Copies | $212.05 |
| Internal Reproduction/Copies | $6,743.40 |
| Court Fees | $790.38 |
| Court Reporters/Transcripts | $122.58 |
| Computer Research | $74.80 |
| Telephone/Fax/E-Mail | $0.00 |
| Postage/Express Delivery/Messenger | $471.68 |
| Professional Fees (expert, investigator, etc.) | $9,253.40 |
| Witness/Service Fees | $0.00 |
| Travel/Meals | $2,405.51 |
| Clerical Overtime | $0.00 |
| A.      Miscellaneous (Describe) | $0.00 |
| B.      TOTAL EXPENSES: | $20,073.80 |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN M. SPAHN, IRA, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | Case No. 4 04CV00086HEA |
| | ) | Consolidated Case Nos. |
| Plaintiffs, | ) ) | 4:04-CV-00118 CAS |
| v. | ) ) | 4:04-CV-00255 DJS |
| | ) | 4:04-CV-00282 DJS |
| EDWARD D. JONES & CO., L.P., JOHN | ) | 4:04-CV-00466 HEA |
| W. BACHMANN, DOUGLAS E. HILL, | ) | 4:04-CV-00467 HEA |
| MICHAEL R. HOLMES, RICHIE L. | ) | |
| MALONE, STEVEN NOVIK, DARRYL L. | ) | **CLASS ACTION** |
| POPE and ROBERT VIRGIL JR., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DECLARATION OF JEROME M. CONGRESS FILED ON BEHALF OF MILBERG WEISS
LLP IN SUPPORT OF APPLICATION FOR AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES**

I, JEROME M. CONGRESS, Declare as follows:

1.      I am a member of the firm Milberg Weiss LLP.  I am submitting this declaration in

support of my firm's application for an award of attorneys' fees and reimbursement of expenses in

connection with services rendered in the prosecution and settlement of the claims asserted in the above-

entitled action.

2.      I am an attorney in good standing and duly licensed and admitted to the New York bar.

The testimony set forth in this Declaration is based on my first-hand knowledge and/or on an

examination of my firm's files.

3.      This firm is Co-Lead Counsel for the *Spahn* Plaintiffs.  In serving as Plaintiffs' Co-Lead

counsel, my firm participated in all of the activities in the *Spahn* action which, together with the

*Enriquez* and *Bressler* actions, resulted in the $127.5 million proposed settlement.  These activities

included conducting a pre-filing investigation, filing an initial complaint, negotiating with other

plaintiffs' counsel to co-ordinate the action brought by our client with other pending litigation,

participating in the preparation and filing of the first and consolidated amended complaints, participating

in a continuing investigation of the claims and theories at issue (including consulting with government

attorneys and monitoring investigations and regulatory proceedings), briefing and arguing the motion to

partially lift the stay imposed by the Private Securities Litigation Reform Act, reviewing, coding and

analyzing the over two million pages of documents produced by Defendants, briefing plaintiffs'

opposition to defendants' motion to dismiss, participating in initial case management conferences and

the formulation of a discovery plan, participating in the development of mediation strategies and

formulating damage theories and proposals for allocation of settlement funds, coordinating with defense

counsel, drafting correspondence, stipulations and notices on behalf of the plaintiffs for matters arising

during pretrial proceedings, employing and consulting with experts, preparing for and participating in

mediation proceedings, consulting with co-counsel and counsel for the State Cases on settlement

strategies and objectives, coordinating and negotiating with counsel for the State Cases, drafting settlement documents, negotiating settlement terms, developing the plan of allocation, developing the Credit Voucher terms and conditions, moving to enforce the settlement, moving for preliminary approval of the settlement, renegotiating the settlement terms, drafting the comprehensive settlement documentation, participating in the administration of the settlement, communicating with Class members, negotiating with Defendants regarding the level of opt-outs to the settlement, briefing in connection with Defendants' motion to re-notice certain Class members, negotiation with Defendants of the amendment to the settlement stipulation to preserve the settlement, and moving for final approval of the settlement.

4.      My firm's compensation for the services rendered on behalf of the Class is wholly contingent. Any fees and reimbursement of expenses will be limited to such amounts as approved by this Court.

5.      With respect to the standing of counsel in this case, attached hereto as Exhibit A is a brief biography of my firm and attorneys in my firm who were principally involved in this Litigation.

6.      The schedule below is a detailed summary indicating the amount of time spent by the partners, attorneys and professional support staff of my firm who were involved in this litigation, and the lodestar calculation based on my firm's current billing rates. The total number of hours spent on this litigation by my firm is 5,262.05. The total lodestar amount for attorney/paralegal time based on the firm's current rates is $ 2,180,827.00. The hourly rates shown below are the usual and customary rates charged in all of our cases. For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by my firm. The schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm.

| Name | Hours | Rate | Amount |
|------|-------|------|--------|
| Bauer, George | 13.75 | 635 | 8,731.25 |
| Congress, Jerome | 828.25 | 695 | 575,633.75 |

| Name | Hours | Rate | Amount |
|------|-------|------|--------|
| Kartalopoulos, Anita | 12.75 | 525 | 6,693.75 |
| Miller, Kim | 331.75 | 425 | 140,993.75 |
| Pollack, Janine | 27.00 | 610 | 16,470.00 |
| Reese, Michael | 220.00 | 410 | 90,200.00 |
| Schulman, Steven | 194.75 | 725 | 141,193.75 |
| Seidman, Peter | 12.25 | 450 | 5,512.50 |
| **Total Partner** | **1,640.50** | | **985,428.75** |
| | | | |
| Andrejkovics, Paul | 95.50 | 415 | 39,632.50 |
| Barravecchio, Robert | 60.25 | 375 | 22,593.75 |
| Czeisler, Jennifer | 40.00 | 390 | 15,600.00 |
| Dietrich, Daniel | 226.50 | 330 | 74,745.00 |
| Dover, Anna | 79.65 | 375 | 29,868.75 |
| Kussin, Todd | 12.75 | 365 | 4,653.75 |
| Lee, Sharon | 14.25 | 375 | 5,343.75 |
| McFarlane, John | 218.00 | 365 | 79,570.00 |
| Rado, Andrei | 117.25 | 370 | 43,382.50 |
| Rodriguez, Tatiana | 63.95 | 350 | 22,382.50 |
| Smith, Alisha | 10.75 | 385 | 4,138.75 |
| Weiss, Adam | 47.00 | 300 | 14,100.00 |
| Wierzbowski, Adam | 253.00 | 330 | 83,490.00 |
| Williams, Belinda | 138.00 | 430 | 59,340.00 |
| Wintterle, Rachel | 28.00 | 365 | 10,220.00 |
| **Total Associate** | **1,404.85** | | **509,061.25** |
| | | | |
| Messinger, Jeff | 12.00 | 475 | 5,700.00 |
| **Total Senior Counsel** | **12.00** | | **5,700.00** |
| | | | |
| Brown, Mark | 447.75 | 400 | 179,100.00 |
| Jarvis, Diana | 109.35 | 405 | 44,286.75 |
| Kutner, William | 6.75 | 405 | 2,733.75 |
| Purvis, Janice | 17.50 | 325 | 5,687.50 |
| Schaefer, Katherine | 126.50 | 405 | 51,232.50 |
| Wright, Tracy | 267.75 | 330 | 88,357.50 |
| Lahr, Amy | 9.00 | 240 | 2,160.00 |
| **Total Temporary Atty** | **984.60** | | **373,558.00** |
| | | | |
| Barrett, Meredith | 14.50 | 235 | 3,407.50 |
| Benkert, Christina | 28.00 | 205 | 5,740.00 |
| Bruijneel, Melissa | 76.00 | 255 | 19,380.00 |
| Chang, Emily | 40.50 | 185 | 7,492.50 |
| Costin, Tyler | 4.50 | 235 | 1,057.50 |
| Dennehy, Erin | 11.25 | 235 | 2,643.75 |
| Hutchison, Evan | 5.00 | 215 | 1,075.00 |
| Joseph, Jason | 16.00 | 235 | 3,760.00 |
| Kelley, Jamuna | 3.00 | 225 | 675.00 |
| Klempner, Seth | 4.00 | 225 | 900.00 |
| Laird, Corrinne | 125.00 | 225 | 28,125.00 |

| Name | Hours | Rate | Amount |
|------|------:|-----:|-------:|
| Liston, Lesa | 44.50 | 205 | 9,122.50 |
| McCook, Austin | 4.00 | 225 | 900.00 |
| Redman, Stacy | 268.0 | 225 | 60,300.00 |
| Rosengarten, Harold | 31.75 | 235 | 7,461.25 |
| Rossi, Milana | 1.00 | 255 | 255.00 |
| Stadelmann, Kelly | 16.50 | 185 | 3,052.50 |
| **Total Paralegal** | **693.50** | | **155,347.50** |
| | | | |
| Edelstein, Jonathan | 1.50 | 175 | 262.50 |
| Kowalick, Gary | 0.75 | 170 | 127.50 |
| **Total Law Clerk** | **2.25** | | **390.00** |
| | | | |
| Bursey, Steve | 37.00 | 440 | 16,280.00 |
| Colby, Patrick | 2.00 | 360 | 720.00 |
| Crowley, Mark | 143.00 | 375 | 53,625.00 |
| Edwards, Thomas | 35.50 | 375 | 13,312.50 |
| Napoli, Michelle | 3.50 | 375 | 1,312.50 |
| **Total Investigator** | **221.00** | | **85,250.00** |
| | | | |
| Costello, Janet | 10.50 | 190 | 1,995.00 |
| Feerick, Sheila | 11.00 | 260 | 2,860.00 |
| Kim, David | 126.50 | 235 | 29,727.50 |
| Laratro, Sara | 50.00 | 255 | 12,750.00 |
| Swihart, Jamie | 12.00 | 235 | 2,820.00 |
| **Total Shareholder Services** | **210.00** | | **50,152.50** |
| | | | |
| Davila, Ed | 3.25 | 200 | 650.00 |
| Goetz, Charles | 0.50 | 220 | 110.00 |
| Morales, Tessa | 0.25 | 145 | 36.25 |
| **Total Library Services** | **4.00** | | **796.25** |
| | | | |
| Harris, Vern | 9.00 | 255 | 2,295.00 |
| Lopez, Milagros | 1.50 | 240 | 360.00 |
| Michaud, Frantz | 18.50 | 240 | 4,440.00 |
| Ortiz, Jessica | 3.60 | 240 | 864.00 |
| **Total Document Clerk** | **32.60** | | **7,959.00** |
| | | | |
| Leif, Steven | 1.50 | 275 | 412.50 |
| **Total Litigation Support** | **1.50** | | **412.50** |
| | | | |
| Stone, Gregory | 4.00 | 385 | 1,540.00 |
| Weinschel, Adam | 12.00 | 240 | 2,880.00 |
| **Total Analyst** | **16.00** | | **4,420.00** |
| | | | |
| Caruso, Penelope | 12.25 | 60 | 735.00 |
| Dent, Jennifer | 3.25 | 60 | 195.00 |
| Hamilton, Douglas | 2.25 | 60 | 135.00 |
| Legnetti, Mary | 20.75 | 60 | 1,245.00 |

| Name | Hours | Rate | Amount |
|------|-------|------|--------|
| Schneider, Gail | 0.75 | 55 | 41.25 |
| **Total Word Processing** | **39.25** | | **2,351.25** |
| | | | |
| **TOTAL TIME/LODESTAR** | **5,262.05** | | **2,180,827.00** |

7.      My firm incurred a total of $149,217.09 in unreimbursed expenses in connection with the

prosecution of this litigation, which includes amounts contributed by my Firm to joint litigation funds

which were spent litigating this action.  My Firm's expenses are broken down as follows:

| | |
|---|---|
| In-house Photocopies/reproduction | $21,862.75 |
| Outside Photocopies/reproduction | 2,232.30 |
| Postage Costs | 257.59 |
| Telephone/Long distance | 1,550.23 |
| Messengers/Express Services | 3,356.09 |
| Filing Fees | 1,212.25 |
| Lexis/Online Research | 21,722.31 |
| Lodging/Meals | 13,727.03 |
| Travel/Transportation | 26,336.21 |
| Facsimile Charges | 322.00 |
| Notices/Publication | 1,199.23 |
| Secretarial Overtime/Word Processing | 8,495.78 |
| Experts/Consultants | 18,680.57 |
| Document/Litigation Support | 12,126.12 |
| | |
| **Total Firm Expenses** | **133,080.46** |
| | |
| Litigation Fund Contributions | 65,479.45 |
| Portion of Litigation Fund Contribution For | |
|    Which We Seek Reimbursement | 16,136.63 |
| | |
| **Total Expenses for Which We Seek Reimbursement** | **149,217.09** |

8.      The expenses incurred pertaining to this case are reflected in the books and records of

this firm.  These books and records are prepared from expense vouchers and check records and are an

accurate record of the expenses incurred.  Spreadsheets which reflect the expenses paid from the

Litigation Funds are attached as Exhibit B to the Declaration of Keith E. Johnson Filed In Support of

Application for Award of Attorneys' Fees and Reimbursement of Expenses, filed herewith.

5

I declare under penalty of perjury under the laws of the Unites States that the foregoing is true and correct. Executed this 8th day of October, 2007, at New York, New York.

_____
JEROME M. CONGRESS

EXHIBIT A

## FIRM RESUME AND BIOGRAPHIES

# MILBERG WEISS LLP

### The Firm's Practice and Achievements

Milberg Weiss was founded in 1965 and was one of the first law firms to prosecute class actions in federal courts on behalf of investors and consumers. The firm pioneered this type of litigation and is now widely recognized as the nation's leading defender of the rights of victims against corporate and other large-scale wrongdoing. The firm has principal offices in New York City and Los Angeles, California. The firm's practice focuses on the prosecution of class and complex actions in many fields of commercial litigation, emphasizing securities, corporate fiduciary, consumer, insurance, antitrust, mass tort, human rights, and related areas of litigation.

In the firm's early years, its founding partners, Lawrence Milberg and Melvyn I. Weiss, built a new area of legal practice in representing shareholders' interests under the then recently amended federal procedure Rule 23, which allowed securities fraud cases, among others, to proceed as class actions. In the following decades, the firm's lawyers obtained decisions that established important legal precedents in many of their areas of practice, and prosecuted cases that set benchmarks in terms of case theories, organization, discovery, trial results, methods of settlement, and amounts recovered and distributed to clients and class members.

Important milestones included the firm's involvement in the *U.S. Financial* litigation in the early 1970s, one of the earliest large class actions, which resulted in the recovery of over $50 million by purchasers of the securities of a failed real estate development company; the Ninth Circuit decision in *Blackie v. Barrack* in 1975, which established the fraud-on-the-market doctrine for securities fraud actions; co-lead counsel position in the *In re Washington Public Power Supply System (WPPSS) Securities Litigation*, a seminal securities fraud action in the 1980s in terms of complexity and amounts recovered; representation of the Federal Deposit Insurance Corp. in a year-long trial to recover banking losses from a major accounting firm, leading to a precedent-setting global settlement; attacking the Drexel-Milken "daisy chain" of illicit junk-bond financing arrangements with numerous cases that resulted in substantial recoveries for investors; representing life insurance policyholders defrauded by "vanishing premium" and other improper sales tactics and obtaining large recoveries from industry participants; and ground-breaking roles in the multi-front attack on deception and other improper activities in the tobacco industry.

Milberg Weiss remains at the forefront in its areas of practice. Recent litigation results include: In re Tyco International Ltd., Sec. Litig. (proposed settlement for cash of $2.975 billion); Nortel Networks (settlement for cash and stock valued at $1.142 billion); Lucent Technologies Securities Litigation ($600 million recovery); Raytheon Co. Securities Litigation ($460 million recovery); Managed Care Litigation (recoveries over $1 billion and major changes in HMO practices); and NASDAQ Market Makers Antitrust Litigation ($1 billion recoveries).

The firm is consistently active in pro bono litigation, highlighted by its leadership role in the *Swiss Bank Litigation*, which led to the recovery of $1.25 billion from Swiss banks to benefit victims of the Holocaust and its recent efforts representing claimants of the September 11 Victim Compensation Fund.

The firm's lawyers come from many different professional backgrounds. They include former federal or state prosecutors, private defense attorneys, and government lawyers. The firm's ability to pursue claims against defendants is augmented by its team of investigators, headed by a former agent for the Federal Bureau of Investigation, and its five full-time forensic accountants.

In 2003, the partners of Milberg Weiss Bershad Hynes & Lerach LLP decided to separate into two groups, with Milberg Weiss LLP serving as the continuing firm.

Milberg Weiss has been responsible for more than $45 billion in recoveries during the life of the firm. Examples of cases in which the firm has taken lead roles include the *WPPSS* litigation, which resulted in settlements totaling $775 million; the *Lincoln Savings and Loan Litigation*, with total recoveries of $240 million out of $288 million in estimated total losses; the *NASDAQ Market-Makers Antitrust Litigation*, which resulted in a $1.027 billion settlement; and actions against major life insurers, including Prudential and MetLife, where the firm has recovered billions of dollars on behalf of policyholders who

were the victims of alleged churning and other improper practices.  In addition, the firm currently plays a major role in the litigation arising from one of the largest scandals in the financial community -- the *IPO Securities Litigation*, in which the firm serves as Chair of Plaintiffs' Executive Committee.  For more information, please visit www.milbergweiss.com.

## JUDICIAL COMMENDATIONS

In *In re September 11 Victim Compensation Fund*, Preliminary Hearing, Claim No. 212-003658 (Dec. 9 2003), Special Master Kenneth R. Feinberg stated the following regarding the firm's commitment to the public interest:

Once again, as I have learned over the years here in New York, the Milberg Weiss firm steps up to the plate in the public interest time and time again. The social conscience of the Milberg Weiss firm, acting through its excellent associates and partners, help deal with crises that confront the American people and others, and I am personally in the debt of Milberg Weiss for the work that it is doing, even under the gun with the December 22 deadline looming. I am once again in Milberg Weiss' debt for their extraordinary willingness to help out in the public interest, and I hope you'll relay that message back to the firm... they are second among none in terms of the public interest, and I'm very, very grateful, not only to you guys for doing this, but... for the firm's willingness to help out. I wanted to let everybody know that.

Mr. Feinberg echoed this sentiment in a subsequent hearing (September 11th Victim Compensation Fund Hearing before Special Master Kenneth R. Feinberg, May 11, 2004):

I also note on the record that the pro bono service of the Milberg Weiss firm is well-known to lawyers and the public throughout the nation, and I'm grateful that this is one more example of how Milberg Weiss serves the nation.  I want to note on the record the extraordinary professionalism and skill of counsel in the preparation of this claim. They have exhibited the finest character of the Bar, and I thank them for a job well done.

Milberg Weiss has been commended by countless judges all over the country for the quality of its representation in class action lawsuits. In *In re Rite Aid Corp. Securities Litigation*, 269 F. Supp. 2d 603, 611 (E.D. Pa. 2003), Judge Dalzell commented on the skill and efficiency of Milberg Weiss attorneys in litigating the complex case:

At the risk of belaboring the obvious, we pause to say a specific word about... the skill and efficiency of the attorneys involved...Milberg Weiss [was] extraordinarily deft and efficient in handling this most complex matter... they were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write-down of over $1.6 billion in previously reported Rite Aid earnings....  In short, it would be hard to equal the skill class counsel demonstrated here.

In *In re Lucent Technologies, Inc. Securities Litigation*, No. 00 CV-621, slip op. at 14-15, 26 (D.N.J. Feb. 24, 2004), Judge Joel A. Pisano of the United States District Court for the District of New Jersey recently issued an Opinion approving the Settlement of the Lucent Technologies Securities Litigation, in which he complimented Milberg Weiss (Co-Lead Counsel for the Plaintiff Class) saying:

[T]he attorneys representing the Plaintiffs are highly experienced in securities class action litigation and have successfully prosecuted numerous class actions throughout the United States.  They are more than competent to conduct this action.  Co-Lead Counsel diligently and aggressively represented Plaintiffs before this Court and in the negotiations that resulted in the Settlement . . . the efforts and ingenuity of Lead Plaintiffs and Lead Counsel resulted in an extremely valuable Settlement for the Benefit of the Class.

In *In re IKON Office Solutions, Inc. Securities Litigation*, 194 F.R.D. 166, 195 (E.D. Pa. 2000), where Milberg Weiss served as co-lead counsel, Judge Marvin Katz of the United States District Court for the Eastern District of Pennsylvania commented on the skill and professionalism of plaintiffs' co-lead counsel:

First, class counsel is of high caliber and has extensive experience in similar class action litigation... Each of the co-lead counsel firms has a national reputation for advocacy in securities class actions, and there is no doubt that this standing enhanced their ability both to prosecute the case effectively and to negotiate credibly. Similarly, defense counsel has a fine reputation and has displayed great skill in defending this complex class action. Their opposition to plaintiffs has been anything but token, and many of the battles on crucial issues were hard fought.

Of particular note in assessing the quality of representation is the professionalism with which all parties comported themselves. The submissions were of consistently high quality, and class counsel has been notably diligent in preparing filings in a timely manner even when under tight deadlines. This professionalism was also displayed in class counsel's willingness to cooperate with other counsel when appropriate... This cooperation enabled the parties to focus their disputes on the issues that mattered most and to avoid pointless bickering over more minor matters.

In *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998), in an opinion dated November 9, 1998, approving settlements totaling over $1.027 billion, Judge Sweet commented:

> Counsel for the Plaintiffs [Milberg Weiss] are preeminent in the field of class action litigation, and the roster of counsel for Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties in this action achieved.

In *In re Prudential Insurance Co. of America Sales Practices Litigation*, 962 F. Supp. 572, 585-86 (D.N.J. 1997), vacated on other grounds, in approving the settlement of a nationwide class action against a life insurer for deceptive sales practices, where Milberg Weiss was co-lead counsel, Judge Wolin observed:

> [T]he results achieved by plaintiffs' counsel in this case in the face of significant legal, factual and logistical obstacles and formidable opposing counsel, are nothing short of remarkable.
>
> \*   \*   \*
>
> Finally, the standing and professional skill of plaintiffs' counsel, in particular Co-Lead Counsel, is high and undoubtedly furthered their ability to negotiate a valuable settlement and argue its merits before this Court. Several members of plaintiffs' counsel are leading attorneys in the area of class action litigation.

At the Fairness Hearing, Judge Wolin stated that "there is no doubt that Class Counsel have prosecuted the interests of the class members with the utmost vigor and expertise." *In re Prudential Ins. Co. of Am. Sales Practices Litigation*, 962 F. Supp. 450, 519 (D.N.J. 1997) (emphasis added).

In approving a $100 million settlement in *In re Prudential Securities Inc. Partnership Litigation*, 912 F. Supp. 97, 101 (S.D.N.Y. 1996), in which Milberg Weiss was one of the lead counsel, Judge Pollack noted that he had "had the opportunity at first hand to observe the quality of plaintiffs' class counsel's representation, both here and in prior complex litigation, and is impressed with the quality of Plaintiffs' Class Counsel."

In *Roy v. The Independent Order of Foresters*, Civ. No. 97-6225 (SKC) at 32 (D.N.J. Aug. 3, 1999), in his opinion on class certification, Judge Chesler noted:

> The firm of Milberg Weiss, which is co-lead counsel for the plaintiff, was also counsel for the plaintiff class in the Prudential case. Thus, the adequacy of the plaintiff's representation is beyond reproach. Furthermore, the tremendous and unprecedented settlements which the Milberg firm has helped to secure for the plaintiff classes in both this case and the Prudential case are a testament to counsel's vigorous pursuit of the class interests.

In *In re Buspirone Patent Litigation*, MDL Docket No. 1413 at 34:2-3 (S.D.N.Y. Nov. 6, 2003) (Final Approval Hearing Transcript), Judge Koeltl commented on plaintiffs' counsel: "Let me say that the lawyers in this case have done a stupendous job."

In *Kruman v. Christie's International*, PLC, 00 Civ. 6322 (LAK) at 36:13-16 (S.D.N.Y. June 2, 2003) (Final Approval Hearing Transcript), Judge Kaplan commented on class counsel's representation:

> I have satisfied myself in examining these papers that counsel involved in this case pursued this very difficult matter tenaciously, with skill, and got what I view to be an excellent result.

## PROMINENT CASES

• **In re Sears, Roebuck and Co. Securities Litigation**, No. 02 C 7527 (N.D. Ill.). This case involved allegations that Sears concealed material adverse information concerning the financial condition, performance and prospects of Sears' credit card operations. The approved settlement provides $215 million to compensate investors who purchased Sears securities between October 24, 2001 and October 17, 2002 and suffered a loss thereon. As an additional benefit to the Class, Sears is separately also paying for the costs of class notice and settlement administration.

• **In re Lucent Technologies, Inc. Securities Litigation**, No. 00 CV 621 (AJL) (D.N.J.). This settlement provides compensation of $600 million to aggrieved shareholders who purchased Lucent stock between October 1999 and December 2000.

• **In re Raytheon Securities Litigation**, 99 CV 12142 (E.D. Mass.). This case concerned claims that a

major defense contractor failed to write down assets adequately on long term construction contracts. In May 2004, Raytheon and its auditor PricewaterhouseCoopers LLP settled for a total of $460 million.

• Milberg Weiss served as co-lead counsel in *In re Oxford Health Plans, Inc. Securities Litigation*, MDL Dkt. No. 1222 (CLB) (S.D.N.Y.), in which settlements totaling $300 million in cash were approved by the Court in June 2003. Plaintiffs alleged that Oxford Health Plans, Inc. issued fraudulent financial statements that misstated its premium revenues and medical claims expense. KPMG LLP, Oxford's outside auditor, was also named as a defendant and was alleged to have issued a materially false and misleading audit opinion on Oxford's financial statements for the year ended December 31, 1996.

• In *In re Rite Aid Securities Litigation*, Master File No. 99-1349 (E.D. Pa.), Judge Stewart Dalzell

3

approved class action settlements totaling $334 million against Rite Aid ($207 million), KPMG ($125 million -- the second largest amount ever recovered from an accounting firm in a federal securities class action, and the largest ever against an auditor in a case where the securities claims were limited to claims under section 10(b), which requires proof of knowing or reckless misconduct), and certain former executives of Rite Aid ($1.6 million).

• *In re Deutsche Telekom AG Securities Litigation*, Civil Action No. 00-CV-9475 (NRB) (S.D.N.Y.). Milberg Weiss served as co-lead counsel in this securities class action, alleging that Deutsche Telekom issued a false and misleading registration statement which improperly failed to disclose its plans to acquire VoiceStream Wireless Corporation and materially overstated the value of the Company's real estate assets. On July 29, 2005, Judge Naomi Reice Buchwald approved a settlement of $120 million in cash.

• *In re CVS Corp. Securities Litigation*, C.A. No. 01-11464 (JLT) (D. Mass). Milberg Weiss served as co-lead counsel in this class action alleging that defendants engaged in a series of accounting improprieties and issued false and misleading statements which artificially inflated the price of CVS stock. On September 7, 2005, Judge Joseph Tauro approved a settlement of $110 million dollars in cash for shareholders who acquired CVS stock between February 6, 2001 and October 30, 2001.

• *In re Scheiner v. i2 Technologies, Inc.*, Civ. No. 3:01-CV-418-H (N.D. Tex.). May 2004 settlement of $84.85 million with i2 Technologies and certain individual defendants. Case alleged securities fraud against defendants relating to company's software product descriptions and alleged violations of Generally Accepted Accounting Principles.

• Milberg Weiss served as co-lead counsel in *Irvine v. ImClone Systems*, Inc., No. 02 Civ. 0109 (RO) (S.D.N.Y.), in which a settlement of $75 million in cash was approved by the Court on July of 2005. Plaintiffs alleged that ImClone issued a number of misrepresentations and fraudulent statements to the market regarding the likelihood of approval of the drug Erbitux, thereby artificially inflating the price of ImClone stock.

• The firm was lead counsel in *In re Prudential Insurance Co. Sales Practice Litigation*, Civ. No. 95-4707 (AMW) (D.N.J.), a landmark case which concerned securities claims as well as common law claims and which resulted in a recovery exceeding $4 billion for Prudential policyholders. The settlement was approved in a comprehensive decision handed down by the Third Circuit. Milberg Weiss has led the litigation of numerous other class actions involving alleged churning practices by other insurance companies and their agents, recovering billions of dollars in actions against major insurers, including MetLife, American Express/IDS, New York Life, ManuLife and John Hancock.

• In *In re NASDAQ Market-Makers Antitrust Litigation*, MDL 1023 (S.D.N.Y.), Milberg Weiss served as court-appointed co-lead counsel for a class of investors. The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry-wide conspiracy in one of the largest and most important antitrust cases in recent history. After three and one half years of intense litigation, the case was settled for a total of $1.027 billion, the largest antitrust settlement ever.

• *In re Washington Public Power Supply System Securities Litigation*, MDL 551 (D. Ariz.). A massive litigation in which Milberg Weiss served as co-lead counsel for a class that obtained settlements totaling $775 million after several months of trial.

• In *In re American Continental Corp./Lincoln Savings & Loan Securities Litigation*, MDL 834 (D. Ariz.), Milberg Weiss served as the court-appointed co-lead counsel for a class of persons who purchased debentures and/or stock in American Continental Corp., the parent company of the now-infamous Lincoln Savings & Loan. The suit charged Charles Keating, other insiders, three major accounting firms, three major law firms, Drexel Burnham, Michael Milken and others with racketeering and violations of securities laws. Recoveries totaled $240 million on $288 million in losses. A jury also rendered verdicts of more than $1 billion against Keating and others.

• *In re Exxon Valdez*, No. A89-095 Civ. (D. Alaska) and *In re Exxon Valdez Oil Spill Litigation*, 3 AN-89-2533 (Alaska Super. Ct. 3d Jud. Dist.). Milberg Weiss is a member of the Plaintiffs' Coordinating Committee and co-chair of Plaintiffs' Law Committee in the massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989. A jury verdict of $5 billion was obtained and is currently on appeal.

• In *In re Managed Care Litigation*, MDL 1334 (S.D. Fla.). Final approval of a settlement between a nationwide class of physicians and defendant CIGNA Healthcare valued in excess of $500 million dollars was granted on April 22, 2004. A similar settlement valued in excess of $400 million involving a nationwide class of physicians and Aetna was approved by the Court on November 6, 2003. The settlements stem from a series of lawsuits filed in both state and federal court by physicians and medical associations currently pending against many of the nation's largest for-profit health insurers arising from conduct involving issues dating back to 1990. These settlements bring sweeping changes to the health care industry and involve improvements to physician-related business practices and provide for the establishment of an independent foundation dedicated to improving the quality of health care in America.

- *In re Baldwin United Annuity Litigation*, No. M-21-35 (S.D.N.Y.). Milberg Weiss served as co-lead counsel in this consolidated proceeding on behalf of purchasers of annuities that was settled for over $160 million.

- *In re MicroStrategy, Inc. Securities Litigation*, No. 00-473-A (E.D. Va.). Milberg Weiss served as co-lead counsel in this action, which alleged securities fraud based on a massive restatement. Settlements with the defendants totaled in excess of $150 million.

- *In re Sunbeam Securities Litigation* (No. 98-8258) (S.D. Fla) Milberg Weiss acted as co-lead counsel for the class. Plaintiffs alleged that Sunbeam, its auditor, and its management engaged in a massive accounting fraud which led to a restatement of over three years of previously reported financial results. The Court approved a combined settlement of over $140 million. The settlement amount included a $110 million settlement with Arthur Andersen, LLP, Sunbeam's auditor. The Andersen settlement is one of the largest amounts ever paid by a public accounting firm to settle claims brought under the federal securities laws. The settlement with the individuals was achieved on the eve of trial, and ended almost four years of litigation against Andersen and Sunbeam's insiders, including Albert Dunlap, Sunbeam's former Chairman and CEO. The settlement included a personal contribution from Dunlap of $15 million.

- In *In re Computer Associates Securities Litigation*, Nos. 98-CV-4839, 02-CV-1226 (TCP) (E.D.N.Y.), Milberg Weiss served as co-lead counsel and obtained a pretrial settlement valued at over $134 million in these securities fraud class actions.

- In *In re IKON Office Solutions, Inc. Securities Litigation*, MDL 1318, Docket No. 98-4286 (E.D. Pa.), Milberg Weiss served as co-lead counsel and obtained a pretrial settlement of $111 million in this securities fraud class action.

- In *In re W.R. Grace & Co. (Official Committee of Asbestos Personal Injury Claimants v. Sealed Air. Corp. and Official Committee of Asbestos Personal Injury Claimants v. Fresenius Medical Care Holdings, Inc.)*, Nos. 02-2210 and 02-2211 (D. Del.), Milberg Weiss acted as lead counsel for the asbestos personal injury and property damage committees in two separate fraudulent conveyance actions within the W.R. Grace bankruptcy. The actions sought to return the assets of Sealed Air Corporation and Fresenius Medical Care Holdings (each of which had been Grace subsidiaries pre-bankruptcy) to the W.R. Grace bankruptcy estate. Complaints in both cases were filed in mid-March 2002, and agreements in principle in both cases were reached on November 27, 2002, the last business day before trial was set to begin in the Sealed Air matter. The total of the two settlements, which consisted of both cash and stock, was approximately $1 billion.

- *In re Kruman v. Christie's International, PLC*, 284 No. 01-7309 (S.D.N.Y.), resulted in the first U.S. Court of Appeals holding that antitrust class actions on behalf of all purchasers injured worldwide can be brought in U.S. courts under U.S. law when an antitrust conspiracy has sufficient effects in the U.S. Decided in March 2002; led to successful settlement in 2003 of claims against Christie's and Sotheby's on behalf of purchasers and sellers at auctions outside the U.S.

- *In re Tyco International Ltd., Securities Litigation*, MDL Docket No. 02-1335-B (D.N.H.). Milberg Weiss is co-lead counsel in this litigation, which involves claims under the Securities Act of 1933 and the Securities Exchange Act of 1934 against Tyco and its former CEO, CFO, general counsel and certain former directors that arise out of Tyco's $5.8 billion overstatement of income and $900 million in insider trading, plus hundreds of millions of dollars looted by insiders motivated to commit the fraud. Claims are also made under the 1933 and 1934 Acts against PricewaterhouseCoopers, LLP, which is alleged to have published false audit opinions on Tyco's financial statements during the Class Period and to have failed to audit Tyco properly, despite knowledge of the fraud. In October 2004, the Court sustained the vast majority of plaintiffs' claims against Tyco and its former senior officers (Dennis Kozlowski, Mark Swartz, Mark Belnick and Frank Walsh), with the exception of one director, as well as Tyco's auditor, PwC. Most recently, on May 15, 2007, Tyco announced its agreement to settle the pending litigation for $2.975 billion in cash.

- *In re Nortel Networks Corp. Securities Litigation*, Civ. No. 01-CV-1855-RMB (S.D.N.Y.). This federal securities fraud class action was commenced in February 2001 against Nortel Networks Corp. and certain of its officers and directors. In February 2002, Milberg Weiss was appointed to serve as sole Lead Counsel for the Class and for the Court-appointed Lead Plaintiff, the Trustees of the Ontario Public Service Employees' Union Pension Plan Trust Fund. In January 2003, the Court sustained the Complaint in its entirety, denying defendants' motion to dismiss and, in September 2003, certified a Class. In certifying the Class, the Court specifically rejected defendants' argument that those who traded in Nortel securities on the Toronto Stock Exchange (and not the New York Stock Exchange) should be excluded from the Class. The Second Circuit denied defendants' attempted appeal.

- *In re Xerox Securities Litigation*, No. 3:99-CV-2374 (AWT) (D. Conn.) and *Carlson v. Xerox Corp.*, No. 3:00-CV-1621 (AWT) (D. Conn.). Milberg Weiss was appointed co-lead counsel in both of these cases. The first case was brought on behalf of a class of purchasers of Xerox common stock from October 22, 1998 (when Xerox first claimed that it was benefiting from a restructuring) through October 7, 1999 (when Xerox finally disclosed the massive problems with the

restructuring that affected its operations and the impact of these problems on its revenues) and alleged misrepresentations regarding Xerox's restructuring. The second case was brought on behalf of a class of purchasers of Xerox common stock from February 17, 1998 through June 28, 2002 and alleged misrepresentations and failure to disclose massive accounting improprieties. As a result of these alleged accounting improprieties, on June 28, 2002 (the last day of the Class Period), Xerox issued a $6.4 billion restatement of equipment sales revenues booked over a five year period.

• Milberg Weiss is prosecuting numerous class actions involving a major area of investment abuse: deceptive sales of deferred annuity tax shelters to investors for placement in retirement plans that are already tax-qualified. In *Nelson v. Pacific Life Ins. Co.*, No. CV203-131 (S.D. Ga.) the district court denied defendants' motion to dismiss and has certified a class. In *American United Life Insurance Co. v. Douglas*, No. 29A02-0304-CV-350 (Ind. Ct. App.), denial of defendant's summary judgment motion was sustained on interlocutory appeal. The SEC and NASD have begun regulatory programs to address these problems.

• Milberg Weiss is co-lead counsel in *In re Vivendi Universal, S.A. Securities Litigation*, 02 Civ. 5571 (RJH), a securities fraud class action on behalf of U.S. and foreign investors who purchased Vivendi ordinary shares or American Depository Shares. Plaintiffs allege that Vivendi embarked on a $77 billion acquisition spree in order to transform itself into a huge international conglomerate. Throughout the Class Period (October 30, 2000 through August 14, 2002), defendants (and in particular, Vivendi's former CEO and Chairman, Jean-Marie Messier, and Vivendi's former CFO, Guillaume Hannezo) reported strong revenue and earnings, and portrayed Vivendi as a company that was generating sufficient cash flow to satisfy its debt obligations on approximately $21 billion in debt that it had amassed in connection with financing its acquisition binge. However, plaintiffs allege that Vivendi's operations and financial condition were much weaker than what their public statements portrayed. Plaintiffs have already defeated defendants' motions to dismiss the complaint, and are in the midst of discovery that will take place in the U.S. and France (where French regulators are conducting their own formal investigations).

• *Rabi Abdullahi v. Pfizer, Inc.*, 01 Civ. 8118 (WHP), (S.D.N.Y.). This is a case in which the firm has brought claims under the Alien Tort Claims act on behalf of Nigerian children and their families who were enrolled in a clinical trial of a drug by Pfizer without their knowledge. Plaintiff alleges that Pfizer's conduct violated the international prohibition on medical experimentation without informed consent when children suffering from meningitis, whose families had brought them to a local hospital for treatment, were secretly enrolled in a clinical trial of the Pfizer drug, Trovan. Plaintiff survived a motion to dismiss for failure to state a claim. The case was dismissed by trial court on jurisdictional grounds and is now back before Second Circuit.

• In *In re General Instrument Corp. Securities Litigation*, No. 01-3051 (LR) (E.D. Pa.), Milberg Weiss served as co-lead counsel and obtained a pretrial settlement of $48 million in this securities fraud class action.

• *In re Royal Dutch/Shell Transport ERISA Litig.*, No. 04-1398 (JWB) (D.N.J.). This was an ERISA breach of fiduciary duty class action against the Royal Dutch/Shell Oil Group of Companies on behalf of certain of the company's U.S. employees invested in the company's stock fund. The $90 million settlement is one of the largest recoverable amounts obtained in an ERISA breach of fiduciary duty case. Notably, the settlement included important provisions regarding the monitoring and training of individuals appointed to be ERISA fiduciaries.

• *In re Triton Energy Limited Securities Litigation*, Civil Action No. 5-98-CV-256 (E.D. Tex. Texarkana Division), settled for $42 million. Plaintiffs alleged that defendants misrepresented, among other things, the nature, quality, classification and quantity of Triton's Southeast Asia oil and gas reserves during the period March 30, 1998 through July 17, 1998.

• Milberg Weiss served as co-lead counsel in *In re Thomas & Betts Securities Litigation*, Civil Action No. 00-CV-2127 (W.D. Tenn), in which plaintiffs recovered $46.5 million dollars in cash from the Company and $4.65 in cash from its outside auditor, KPMG. Plaintiffs alleged that Thomas & Betts engaged in a series of accounting improprieties while publicly representing that its financial statements were in compliance with GAAP, and failed to disclose known trends and uncertainties regarding its internal control system and computer and information systems.

• *In re MTC Electronic Technologies Shareholder Litigation*, Master File No. CV-93-0876 (JG) (E.D.N.Y.). Plaintiffs alleged that defendants issued false and misleading statements concerning, among other things, purported joint venture agreements to establish telecommunications systems and manufacture telecommunications equipment in China. The Court approved a settlement of $70 million, including $65 million in cash and $5 million worth of MTC Class A shares with "put" rights.

• In *In re Painewebber Limited Partnerships Litigation*, Master File 94 Civ. 8547 (SHS) (S.D.N.Y.), Milberg Weiss represented investors alleging that PaineWebber developed, marketed and operated numerous investment partnerships as part of an ongoing conspiracy to defraud investors and enrich itself through excessive fees and commissions over a twelve-year

period. On March 20, 1997, Judge Sidney Stein approved a settlement of $200 million, which consisted of $125 million in cash and $75 million worth of guarantees and fee waivers.

• In *In re Ames Department Stores, Inc.,* MDL Dkt. No. 924 (MP) (S.D.N.Y.), Milberg Weiss represented purchasers of Ames securities alleging that defendants issued false and misleading statements regarding the success of Ames' integration of a major acquisition and the Company's future financial prospects. The Court approved a settlement of $41 million in cash.

• In *In re VMS Securities Litigation,* No. 89 C 9448 (N.D. Ill.), Milberg Weiss secured a settlement of $59 million on behalf of a class of investors alleging that defendants committed securities fraud by engaging in misrepresentations concerning a group of real estate investment trusts. Plaintiffs alleged that defendants had misrepresented the funds' business practices, loan portfolios and financial well-being and concealed liquidity problems and the financial status of many of the funds' borrowers.

• In *Andrews v. AT&T,* No. CV 191-175 (S.D. Ga.). The firm represented a class of persons who paid for premium-billed "900-number" calls that involved allegedly deceptive games of chance, starting in 1993. Defendants included major long-distance companies, which approved the call programs and billed for the calls. Defendant MCI settled for $60 million in benefits; the class against AT&T was decertified on appeal and the firm prosecuted the individual plaintiffs' claims, obtaining a jury verdict in 2003 for compensatory and punitive damages.

## PRECEDENT-SETTING DECISIONS

Milberg Weiss has consistently been a leader in developing the law for investors and consumers under the federal securities, antitrust and consumer protection laws. The firm has represented individual and institutional plaintiffs in hundreds of class action litigations in federal and state courts throughout the country. In most of those cases, Milberg Weiss has served as lead or co-lead counsel for the class. The firm has also been responsible for establishing many important precedents, including:

• *Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976). This is the seminal appellate decision on the use of the "fraud-on-the-market" theory, allowing investors who purchase stock at artificially inflated prices to recover even if they were personally unaware of the false and misleading statements reflected in the stock's price. The court stated that class actions are necessary to protect the rights of defrauded purchasers of securities.

• *Novak v. Kasaks,* 216 F.3d 300 (2d Cir. 2000). The firm was lead counsel in this seminal securities fraud case in which the Second Circuit undertook an extensive analysis of the statutory text and the legislative history of the PSLRA and pre-existing Second Circuit case law. Among other things, the Second Circuit held that the PSLRA's pleading standard for scienter was largely equivalent to the pre-existing Second Circuit standard and vacated the district court's dismissal which sought to impose a higher standard for pleading scienter under the PSLRA. The Second Circuit also rejected any general requirement that plaintiffs' confidential sources must be disclosed to satisfy the PSLRA's newly-enacted particularity requirements.

• *In re Cabletron Systems, Inc.,* 311 F.3d 11 (1st Cir. 2002). The First Circuit joined the Second Circuit in allowing a complaint to be based on confidential sources. The Court also accepted the argument made by Milberg Weiss that courts should consider the amount of discovery that has taken place in deciding a motion to dismiss and that the lack of discovery will result in a less stringent standard for pleading securities fraud claims with particularity.

• *Gebhardt v. ConAgra Foods, Inc.,* 335 F.3d 824 (8th Cir. 2003). This important decision strongly reaffirmed the principle that whether an undisclosed fact would have been material to investors cannot ordinarily be decided on a motion to dismiss. The Eighth Circuit, stressing that "[t]he question of materiality hinges on the particular circumstances of the company in question," observed that even relatively small errors in financial statements might be material if they concern areas of particular importance to investors and raise questions about management integrity.

• *In re Advanta Corp. Securities Litigation,* 180 F.3d 525 (3d Cir. 1999). Here, the firm successfully argued that, under the PSLRA, the requisite scienter is pled by making an adequate showing that the defendants acted knowingly or with reckless disregard for the consequences of their actions. As urged by this firm, the Third Circuit specifically adopted the Second Circuit's scienter pleading standard for pleading fraud under the PSLRA.

• *In re NASDAQ Market-Makers Antitrust Litigation,* 169 F.R.D. 493 (S.D.N.Y. 1996). The court certified a class of millions of investors, who were harmed by an industry-wide conspiracy where

NASDAQ market-makers set and maintained wide spreads, over defendants' strenuous objections.

- *In re Initial Public Offering Securities Litigation*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003). The Court sustained, in large part, the plaintiffs' complaints against more than 50 underwriters of high-tech stocks in one of the most comprehensive decisions issued under the securities laws. Milberg Weiss serves as the Chair of Plaintiffs' Executive Committee in this landmark litigation.

• *Asher v. Baxter International, Inc.*, 377 F.3d 727 (7th Cir. 2004). In reversing and remanding the dismissal by the District Court, the Seventh Circuit resolved an important issue involving the PSLRA "safe harbor" for forward-looking statements in plaintiffs' favor. The Court held that whether a cautionary statement is meaningful is an issue of fact, because whether a statement is meaningful or not depends in part on what the defendant knew as well as other issues of fact. Thus, this issue is not appropriately resolved on a motion to dismiss.

- In *In re Vivendi Universal, S.A. Securities Litigation*, 2003 U.S. Dist. LEXIS 19431 (S.D.N.Y. Nov. 3, 2003), Judge Harold Baer upheld plaintiffs' claims under Section 10(b) of the Securities Exchange Act of 1934, which alleged that Vivendi and two of its former executives (CEO Jean-Marie Messier and CFO Guillaume Hannezo) did not disclose to investors that: (1) Vivendi's corporate acquisition programs had brought Vivendi to the brink of a potentially catastrophic liquidity crisis; (2) although it consolidated the financial results of several majority owned subsidiaries, Vivendi did not have access to the cash flows of these entities; (3) Vivendi failed to write down billions of dollars of impaired goodwill from prior acquisitions; and (4) one of Vivendi's U.S. subsidiaries improperly recognized revenue "up front" on the full value of long term contracts. The case is particularly notable because the court held that because of defendants' activities in New York promoting Vivendi stock, defendants' conduct was more than "merely prepatory" to the alleged fraudulent scheme, and thus the court had jurisdiction not only over purchasers of Vivendi ADRs on the NYSE, but also over the claims of foreign purchasers who purchased Vivendi ordinary shares on foreign exchanges.

- In *Hunt v. Alliance North American Government Income Trust, Inc.*, 159 F.3d 723 (2d Cir. 1998), the Second Circuit reversed the district court's ruling, which denied plaintiffs a cause of action against defendants for failing to disclose that the Trust was unable to utilize proper "hedging" techniques to insure against risk of loss. In the Court's view, taken together and in context, the Trust's representations would have misled a reasonable investor.

- In *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194 (1st Cir. 1996), the First Circuit remanded plaintiffs'

action after affirming, in part, Milberg Weiss' position that in association with the filing of a prospectus related to the issuance of securities, a corporate-issuer must disclose intra-quarter, materially adverse changes in its business, if such adverse changes constitute "material changes" the disclosure of which is required pursuant to the Securities Act of 1933.

- *In re Salomon, Inc. Shareholders Derivative Litigation*, 68 F.3d 554 (2d Cir. 1995). The Second Circuit affirmed the district court's holding that derivative federal securities claims against defendants would not be referred to arbitration pursuant to the arbitration provisions of the Rules of the New York Stock Exchange, but would be tried in district court. Shortly thereafter, the case settled for $40 million, which is among the largest cash recoveries ever recorded in a derivative action.

- *Kamen v. Kemper Financial Services*, 500 U.S. 90 (1991). The Supreme Court upheld the right of a stockholder of a mutual fund to bring a derivative suit without first making a pre-suit demand.

- *Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985). The Second Circuit reversed the district court's dismissal of a securities fraud complaint, in an important opinion clarifying the "fraud" pleading requirements of Federal Rules of Civil Procedure, Rule 9(b).

- *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873 (9th Cir.), cert. denied, 469 U.S. 932 (1984). The Ninth Circuit upheld an investor's right to pursue a class action against an accounting firm, adopting statute of limitation rules for §10(b) suits that are favorable to investors.

- *Hasan v. CleveTrust Realty Investors*, 729 F.2d 372 (6th Cir. 1984). The Sixth Circuit very strictly construed, and thus narrowed, the ability of a "special litigation committee" of the board of a public company to terminate a derivative action brought by a shareholder.

- *Cowin v. Bresler*, 741 F.2d 410 (D.C. Cir. 1984). The Court of Appeals reversed the lower court's dismissal of the complaint. The firm had sought the extraordinary remedy of the appointment of a receiver over the affairs of a public company due to the highly specific allegations of fraud, dishonesty and gross mismanagement by the corporation's controlling shareholders.

- *Fox v. Reich & Tang, Inc.*, 692 F.2d 250 (2d Cir. 1982), aff'd sub nom, *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984). The court held that a derivative action to recover excessive advisory fees may be brought on behalf of an investment company without any prior demand on the board.

- *Rifkin v. Crow*, 574 F.2d 256 (5th Cir. 1978). The Fifth Circuit reversed an order granting summary judgment for defendants in a §10(b) case, paving the way for future acceptance of the "fraud-on-the-market" rationale in the Fifth Circuit.

• *Bershad v. McDonough*, 300 F. Supp. 1051 (N.D. Ill. 1969); aff'd, 428 F.2d 693 (7th Cir. 1970). The plaintiff obtained summary judgment for a violation of §16(b) of the Securities Exchange Act in which the transaction was structured by the defendants to look like a lawful option. The decision has been cited frequently in discussions as to the scope and purpose of §16(b).

• *Heit v. Weitzen*, 402 F.2d 909 (2d Cir. 1968), rev'g, 260 F. Supp. 598 (S.D.N.Y. 1966). The court held that liability under §10(b) of the Securities Exchange Act extends to defendants who were not in privity with the named plaintiffs or the class represented by the named plaintiffs.

• *In re Cox v. Microsoft*, No. 03-2922 (App. Div. 1st Dep't, June 2004). First appellate ruling in New York state courts that class actions may be pursued in the New York state courts for some antitrust violations on behalf of indirect purchasers under New York deceptive practices laws as well as common law claims for unjust enrichment. May open the door to class action recovery of damages on behalf of New York purchasers of Microsoft software comparable to settlements reached in various other states such as California, where Microsoft settled for approximately $1 billion.

• *In re JLM Industries, Inc. v. Stolt-Nielsen SA*, No. 3:03CV348 (D. Conn. June 24, 2003). Milberg Weiss succeeded in establishing that arbitration of horizontal conspiracy claims, arising under Section 1 of the Sherman Act, cannot be compelled on grounds that such claims do not "arise from" the injured person's purchase contract. (Currently on appeal and awaiting decision from the Second Circuit.)

• In *Puckett v. Sony Music Entertainment*, No. 108802/98 (New York Co. 2002), Milberg Weiss achieved a precedent-setting decision in which a class action was certified against Sony Music Entertainment on behalf of a class of recording artists who were parties to standard Sony recording or production agreements entered into at any time during the period of January 1, 1965 to the date of the filing of the complaint in 1998. The complaint alleged that Sony had a policy of treating the value added tax on foreign sales of recordings improperly thereby impermissibly reducing the royalties paid or credited to the class members. Justice DeGrasse of the New York State Supreme Court determined that class certification was appropriate and that Gary Puckett (of Gary Puckett & the Union Gap) and jazz musician and composer Robert Watson were appropriate class representatives to represent the class of artists and producers to whom Sony accounts for foreign record royalties.

Additionally, in the context of shareholder derivative actions, Milberg Weiss has been at the forefront of protecting shareholders' investments by causing important changes in corporate governance as part of the global settlement of such cases. Cases in which such changes were made include:

• *In re Marketspan Corporate Shareholder Litigation*, CV No. 98-15884 (N.Y. Sup. Ct.) (settlement agreement required modifications of corporate governance structure, changes to the audit committee and changes in compensation awards and the nominating committee);

• *Abramsky v. Computer Sciences Corp.*, CV No. 98-00306-JBR (RLH) (D. Nev. 1998) (significant changes to the company's by-laws and governance procedures to enhance shareholder voting rights and the role of outside directors).

# MILBERG WEISS LLP

### The Firm's Partners

GEORGE A. BAUER III earned his B.B.A. degree *magna cum laude* in 1976 from Bernard M. Baruch College of the City University of New York, where he majored in accounting. He was awarded the Andrew J. Coppola prize in Law from Baruch College. Mr. Bauer attended New York University School of Law and graduated with a J.D. degree in 1979.

Mr. Bauer's practice concentrates on Class Action Settlements and Settlement Administration. He has played a lead role in documenting and effectuating many of the largest and most complex securities litigations settlements ever obtained, notably including: the proposed $1.14 billion settlement for cash and stock of the *In re Nortel Networks Corp. Securities Litigation* Civil Action No. 01-CV-1855 (RMB) (S.D.N.Y.); the $1.027 billion settlement of the *In re NASDAQ Market-Makers Antitrust Litigation*, MDL No. 1023, (S.D.N.Y.); settlements relating to the $2 billion estate of the Drexel Burnham Lambert including *In re Drexel Burnham Lambert Group*, 90 Civ. 6954 (MP) (S.D.N.Y.) and the $1.3 billion settlement of the *In re Michael Milken & Associates Securities Litigation*, MDL 924 (S.D.N.Y.); settlements worth over $775 million in *In re Washington Public Power Supply Systems Securities Litigation*, MDL 551 (D. Ariz.); settlements including cash and securities worth over $615 million in *In re Lucent Technologies Inc. Securities Litigation*, Case No 00-CV-621 (JAP) (D. N.J.); the $300 million cash settlement of *In re Oxford Health Plans Inc., Securities Litigation*, MDL No. 1222 (CLB) (S.D.N.Y.); the $200 million settlement in *In re PaineWebber Limited Partnerships Litigation*, Master File No. 94-Civ.8547 (SHS)(S.D.N.Y.); the settlement for cash and securities worth over $137.5 million in *In re Microstrategy Inc. Securities Litigation*, Civil Action N. 00-473-A (E.D. Va, Alexandria Division); the settlements for securities worth over $133.5 million in *In re*

*Computer Associates Class Action Securities Litigation*, Master File No. 98 Civ. 4839 (TCP), and *In re Computer Associates 2002 Class Action Securities Litigation*, Master File No,.02-CV-1226 (TCP) (E.D.N.Y.); and the $110 million settlement in *In re Prudential Securities Inc. Limited Partnerships Securities Litigation*, MDL 1005 (MP) (S.D.N.Y.).

Mr. Bauer is a member of the Firm's Library Committee. He is also a member of the American Bar Association, the New York State Bar Association, the Association of Trial Lawyers of America, and the New York County Lawyers Association.

Mr. Bauer was admitted as a member of the New York Bar in January 1980 and is also admitted to the United States District Court for the Southern and Eastern Districts of New York. Mr. Bauer is admitted to practice before the United States Supreme Court and the United States Courts of Appeals for the Second and Fourth Circuits.

JEROME M. CONGRESS received an A.B. degree with honors from Cornell University. From 1960 to 1962 he was a Fulbright Scholar at Oxford University, England, where he studied philosophy, politics and economics. He received an LL.B. degree *cum laude* from Harvard Law School where he was an editor of *Harvard Law Review* during 1963-1964.

Since graduating from law school, Mr. Congress has spent the bulk of his time in commercial and securities litigation.

Mr. Congress is admitted to practice in the courts of the State of New York, as well as the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second Circuit.

**ANITA BRASS KARTALOPOULOS** graduated with a B.A. degree from the University of Toledo, with honors in 1974, majoring in classics, and graduated from Seton Hall Law School in 1982, with emphasis on health care law. Ms. Kartalopoulos works primarily in the areas of insurance, consumer fraud, securities and managed care. Before joining Milberg Weiss in 1998, she was in government service in the State of New Jersey, holding several positions including deputy commissioner of insurance for life and health, director of legal regulatory affairs for the Department of Health and Senior Services and executive director of the New Jersey Real Estate Commission.

As deputy commissioner of insurance she managed the New Jersey Insurance Department's Multi-State Task Force investigating the sales practices of the Prudential Insurance Company. She also served on the Board of Directors of MBL Insurance Company as a rehabilitator and managed litigation pursuant to the company's rehabilitation.

Thereafter as director of legal and regulatory affairs for the Department of Health and Senior Services, Ms. Kartalopoulos was responsible for litigation management, the development of all regulations implementing the New Jersey Healthcare statutes, the development and implementation of a streamlined Certificate of Need (CN) law, and the development of stringent prompt payment regulations to ensure that HMO's meet contractual obligations to physicians and ensure the stability of the health care network for the benefit of consumers.

As executive director of The New Jersey State Real Estate Commission, Ms. Kartalopoulos was responsible for implementing consumer disclosure/protection regulations which had been long opposed by the New Jersey real estate industry. She was also responsible for all disciplinary investigations and hearings against realtors, the inspection and registration of out of state land sales marketed in the State of New Jersey, continuing licensing of 84,000 realtors and brokers and the on-going development of real estate regulations. Ms. Kartalopoulos also worked with New Jersey

Attorney General Deborah Poritz in the development of Megan's Law.

Prior to government service, Ms. Kartalopoulos specialized in local government law and land use representing a number of municipal governments, planning boards and boards of adjustment. She was responsible for litigation before both the State and Federal Courts, and negotiated significant settlements with the New Jersey Council on Affordable Housing (COAH) for the benefit of low income residents of the State.

Ms. Kartalopoulos has co-authored the following publications on the subject of securities and shareholder litigation: *Deterring Executive Compensation Excesses: Regulatory Weaknesses, Litigation Strengths* (03/05, NY, NY) and *Vintage Wine In New Bottles: The Curious Evolution of the Concept of Loss Causation* (11/05, NY, NY).

Ms. Kartalopoulos was admitted to the bar of New Jersey and the U.S. District Court, District of New Jersey, the same year. She is also admitted to the U.S. Courts of Appeals for the Federal Circuit and the 3rd Circuit.

**KIM MILLER** (former partner) graduated with a B.A. degree with honors from Stanford University in 1992 with a double major in English and psychology. She earned her J.D. degree from Cornell Law School, cum laude, in 1995. While at Cornell, Ms. Miller acted as co-chair of the Women's Law Symposium, as bench brief editor of the Cornell Moot Court Board, and as a member of the Board of Editors of the Cornell Journal of Law & Public Policy. She is admitted to practice in the States of California and New York and before the United States District Courts for the Southern and Eastern Districts of New York and the Northern, Southern, and Central Districts of California.

**JANINE L. POLLACK** graduated from Rutgers University in 1986, with high honors, with a B.A. She majored in English and French and was a member of Phi Beta Kappa. In 1989, Ms. Pollack earned her J.D. from the University of Pennsylvania School of Law. She was a member of the International Journal of Business Law.

- 11 -

Since joining Milberg Weiss in 1991, Ms. Pollack has prosecuted numerous different class actions, including securities and consumer fraud, sex discrimination and annuities cases. She is a member of the firm's Hiring Committee; runs the firm's CLE program; is in charge of, and a mentor in, the firm's Mentor program; and is an editor for numerous of the firm's publications and brochures. Ms. Pollack has spoken at numerous conferences and CLE programs, including Mealey's and the firm's in-house CLE program.

Ms. Pollack is a member of the American Bar Association. She was admitted to the New York State Bar in 1990. She was also admitted to the New Jersey State Bar in 1989, as well as the U.S. District Court for the District of New Jersey. In 1990, Ms. Pollack was admitted to the U.S. District Court for the Southern and Eastern Districts of New York.

**MICHAEL REESE** (former partner) graduated from New College in 1992 with a B.A. in history and received his J.D. degree from the University of Virginia School of Law in 1996.

Mr. Reese litigates securities, consumer and antitrust cases both as class actions and on behalf of individual clients. Mr. Reese was counsel on *In re Sears, Roebuck & Co. Securities Litigation* (N.D. Ill), a case that recently settled for $215 million. Mr. Reese is also counsel on a number of pending securities class actions, including *Siemers v. Wells Fargo & Co.* (N.D. Cal.) and *In re Edward Jones & Co. Securities Litigation* (E.D. Mo.). Mr. Reese was also lead counsel on a number of pending state consumer fraud class actions, including *In re Orbitz Taxes and Fees Litigation* (Cook County Circuit Court); *Messick v. Pioneer* (Los Angeles County Superior Court); *Deaton v. Hotwire* (San Francisco County Superior Court); and *Bush v. Cheaptickets* (Los Angeles County Superior Court).

Prior to joining Milberg Weiss in 2000, Mr. Reese served as an assistant district attorney at the Manhattan District Attorney's Office where he prosecuted both violent and white-collar crime.

Mr. Reese is admitted to the state bars of New York and California, as well as to the Southern and Eastern Districts of New York; Eastern, Northern and Central Districts of California; Northern District of Illinois; District of Colorado and Ninth Circuit Court of Appeals.

**PETER E. SEIDMAN** earned his B.A. *cum laude* from Hobart College in 1979, following which he served as a Peace Corps volunteer living and working among the Guarani, an indigenous tribe in Paraguay. He earned an M.A. degree in journalism in 1982 from the University of Michigan and subsequently worked as a journalist for a variety of publications. In 1994, he was awarded a J.D. degree *cum laude* from the University of Michigan Law School.

Mr. Seidman joined Milberg Weiss in 2000 as an associate. He actively engages in the investigation and prosecution of securities litigation on behalf of defrauded investors. Before joining Milberg Weiss, he was an associate with the New York law firm of Orans, Elsen & Lupert LLP for five years, where he was active in both civil and white collar criminal litigation in federal and state courts.

Mr. Seidman is admitted to practice in the courts of the State of New York, as well as the United States District Courts for the Northern, Southern, and Eastern Districts of New York.

## ASSOCIATES

**PAUL J. ANDREJKOVICS** graduated from Union College in 1992, Phi Beta Kappa, *magna cum laude*, with a B.A. degree in political science. In 1995, Mr. Andrejkovics received his J.D. degree from Albany Law School. He was admitted as a member of the New York Bar in 1996 and is also admitted to the United States District Court for the Northern, Southern, and Eastern Districts of New York.

His practice concentrates on Class Action Settlements and Settlement Administration. Mr. Andrejkovics has played a supporting role in documenting and effectuating some of the largest and most complex securities litigations

settlements ever obtained, notably including: the proposed $1.14 billion settlement for cash and stock of the In re Nortel Networks Corp. Securities Litigation Civil Action No. 01-CV-1855 (RMB) (S.D.N.Y.); the $300 million cash settlement of In re Oxford Health Plans Inc., Securities Litigation, MDL No. 1222 (CLB) (S.D.N.Y.); and the settlements for securities worth over $133.5 million in In re Computer Associates Class Action Securities Litigation, Master File No. 98 Civ. 4839 (TCP) and In re Computer Associates 2002 Class Action Securities Litigation, Master File No,.02-CV-1226 (TCP) (E.D.N.Y.).

ROBERT BARRAVECCHIO (former associate) earned his B.S. degree in industrial and labor relations from Cornell University in 1995. He earned his J.D. degree from New York Law School in 1998.

Mr. Barravecchio focuses his practice on class actions on behalf of defrauded investors and consumers. He also has extensive litigation experience with regard civil rights and employment discrimination actions where he has obtained significant settlements on behalf of victims of employment discrimination. Additionally, Mr. Barravecchio currently is part of the litigation team prosecuting actions against numerous mutual fund investors.

Mr. Barravecchio is a member of the Pro Bono mediation Panel for the Southern District of New York and the New York State Bar Association. His published decisions include: *Joseph v. New York Yankees Partnership*, 2000 U.S. Dist. LEXIS 15417 (S.D.N.Y. October 19, 2000) and *Wilson v. Toussie*, 2003 U.S. Dist. LEXIS 23756 (E.D.N.Y.)

JENNIFER S. CZEISLER graduated from Hofstra University in 1994 with a B.A. degree in psychology. After completing graduate degree work at Hunter School of Social Work (1994-95), she pursued a J.D. degree, which she earned in 1999 from the University of Miami School of Law, where she graduated *cum laude*. Ms. Czeisler was on the editorial board of the *Law Review of Psychology, Public Policy & Law* and earned numerous awards, including the Cali

Excellence for the Future Award, Dean's Certificate of Achievement Award and membership in the Phi Delta Phi National Honor Society. Ms. Czeisler is admitted to practice in the State of New York and is a member of the American Bar Association, where she is committed to her pro bono work with the American Bar Association Commission on Legal Problems of the Elderly.

DAN P. DIETRICH (former associate) graduated from the University of Florida in 1997 with a double major in Finance and Management. He earned his M.B.A. in Finance from the University of Miami in 2000 and his J.D. degree from St. John's University School of Law in 2003. While at St. John's, Mr. Dietrich was the Editor-in-Chief of the New York International Law Review. He is admitted to the bar of the State of New York, and is awaiting admission to the Florida Bar. He is also a member of the New York State Bar Association and the American Bar Association.

ANNA DOVER received a B.A. degree from Wesleyan University in 1995, and a J.D. degree from the University of California at Davis School of Law in 2001. While in law school, Ms. Dover was a member of the UC Davis Law Review.

Ms. Dover focuses her practice on class actions on behalf of defrauded investors and consumers. She currently represents shareholders in actions against various mutual fund families in which Milberg Weiss has been appointed sole or co-lead counsel including In re Dreyfus Mutual Funds Fee Litigation (W.D. Pa.) and In re American Mutual Funds Fee Litigation (C.D. Cal.).

She is admitted to practice in the courts of the State of California and New York.

TODD KUSSIN received his B.A. degree from Cornell University in 1997 and his J.D. degree from Hofstra University School of Law in 2002. While a law student, Mr. Kussin served as Research Editor of the Hofstra Law Review. He also worked for the Unemployment Action

Center, providing counsel to indigent clients seeking unemployment insurance.

Mr. Kussin focuses his practice primarily on securities class action litigation on behalf of defrauded individual and institutional investors. Prior to joining Milberg Weiss, Mr. Kussin was an associate at Clifford Chance US LLP.

Mr. Kussin was admitted to the New York State Bar in 2003.

SHARON M. LEE (former associate), graduated from St. John's University in 1997 with a B.A. degree in Asian studies, and a M.A. degree in East Asian studies in 1998. Ms. Lee earned her J.D. degree from St. John's University School of Law in 2001 where she was the notes and comments editor of *The New York International Law Review*, and the author of an article published therein. Ms. Lee is a member of the New York State Bar Association. She is admitted to the bar of the State of New York, and is admitted to practice in the Southern and Eastern Districts of New York.

JOHN R. S. MCFARLANE received a B.Comm. degree from Dalhousie University School of Business Administration in 1996, and an LL.B from Dalhousie Law School in 2002. Mr. McFarlane focuses his practice on class actions on behalf of defrauded investors, as well as actions against various mutual fund families in which Milberg Weiss has been appointed lead counsel, including In re American Express Financial Advisors Securities Litigation (S.D.N.Y.). Prior to joining Milberg Weiss, he practiced securities law at Cassels, Brock & Blackwell LLP in Toronto, Ontario.

Mr. McFarlane was admitted to the Law Society of Upper Canada in 2003, and the New York State Bar in 2006.

ANDREI RADO (former associate), born in Bucharest, Romania, earned his B.A. degree in psychology *summa cum laude*, at the State University of New York at Buffalo in 1996; and his J.D. degree at St. John's University, *cum laude* in 1999, where he was a member of Phi Beta Kappa. Mr. Rado authored 12 New York International Law Review 97, 1999.

Mr. Rado, who is fluent in Romanian, has worked at Milberg Weiss since 2000, where his practice focuses on securities and consumer class actions. Prior to joining Milberg Weiss, Mr. Rado worked as an attorney at Bear Stearns & Co. Inc., focusing on rules and regulations relating to resales of control and/or restricted securities. While in law school, Mr. Rado was a senior staff member of the *New York International Law Review*. Mr. Rado is the author of a case commentary, *Ministry of Defense of Iran v. Cubic Defense Systems Inc.*, 12 N.Y. Int'l. L. Rev. 97 (1999).

Mr. Rado is admitted to practice in the courts of the State of New York, as well as the United States District Court for the Southern District of New York.

TATIANA RODRIGUEZ (former associate), received a B.A. degree from McGill University in 1998, a J.D. from University of San Diego School of law in 2001, and an L.L.M. from Boston University in Banking and Financial Law in 2004. During her L.L.M. at Boston University, Ms. Rodriguez assisted in organizing and preparing materials examining the history and problems of the Investment Company Act. She also researched and wrote many papers dealing with current issues in the investment management industry.

Ms. Rodriguez focuses her practice on class actions on behalf of defrauded investors and consumers. She currently represents shareholders in actions against various mutual fund families in which Milberg Weiss has been appointed sole lead counsel, including *In re Goldman Sachs Fee Litigation* (S.D.N.Y.) and *In re Dreyfus Fee Litigation* (W.D. Pa.P).

Ms. Rodriguez is admitted to the Bars of the States of New York and California.

ALISHA C. SMITH (former associate), graduated from the University of Maryland in 1997 with a B.A. degree in government and politics. In 2000, she earned her J.D. degree

from Washington University School of Law in St. Louis. While a law student, Ms. Smith clerked for Judge Theodore McMillian on the United States Court of Appeals for the Eighth Circuit. Prior to graduation, she worked as a full-time intern at the Securities and Exchange Commission in the Division of Market Regulation Office of Chief Counsel.

After graduation, Ms. Smith remained in the Washington, D.C. area and in 2002 she received her LL.M. in securities regulation from the Georgetown University Law Center.

Ms. Smith focuses her practice in the area of securities fraud class action litigation.

Ms. Smith is a member of the Maryland State Bar Association, the American Bar Association, and the Securities and Exchange Commission Historical Society. Ms. Smith was admitted to practice in the State of Maryland in 2001 and admitted to practice in the State of New York in 2003.

**ADAM WEISS** (former associate) graduated with Distinction from Cornell University in 1998, *Phi Beta Kappa*. In 2004, Mr. Weiss graduated from the University of Pennsylvania School of Law. Prior to entering law school, Mr. Weiss was an Investigator at the New York City Civilian Complaint Review Board. While a law student, he was a Senior Editor of the Journal of Constitutional Law. He was also the recipient of the James Wilson Scholarship. Mr. Weiss was a summer associate at Milberg Weiss during the summers of 2002 and 2003.

Mr. Weiss's practice areas include securities class action litigation and consumer fraud litigation on behalf of defrauded individual and institutional investors. In his largest case, he represents mutual fund investors in actions alleging that mutual fund companies and brokerage houses are charging their clients excessive fees and commissions. Mr. Weiss was admitted to the New Jersey State Bar in 2004 and the New York State Bar in 2005.

**ADAM H. WIERZBOWSKI** (former associate), graduated magna cum laude with high honors in

English from Dartmouth College in 2000 and earned his J.D. with honors from The George Washington University Law School in 2003. While at George Washington, Mr. Wierzbowski was Notes Editor of The George Washington International Law Review and a member of the Moot Court Board. Mr. Wierzbowski also won Best Brief and was the Best Overall Competitor in the 2001-2002 Giles S. Rich Intellectual Property Law Moot Court Competition. Mr. Wierzbowski is admitted to the New York State Bar.

**BELINDA WILLIAMS** focuses her practice on class actions on behalf of defrauded investors and consumers.

Ms. Williams has extensive experience in litigating complex commercial cases. Prior to joining Milberg Weiss, Ms. Williams was associated with law firms in New York City and was a Principal Law Secretary to the Hon. Leland DeGrasse of the Supreme Court for the State of New York, County of New York.

**RACHEL S. WINTTERLE** earned her B.A. degree from the University of Wisconsin in 1991, her M.A. degree from American University in 1994, and her J.D. degree from Tulane University School of Law in 2002.

Ms. Wintterle concentrates her practice primarily on class actions on behalf of defrauded investors and consumers and is one of the attorneys prosecuting the *Initial Public Offering Securities Litigation* pending in the United States District Court for the Southern District of New York. Ms. Wintterle has also been active in healthcare litigation, including the *In re: Managed Care Litigation* and other class actions brought on behalf of physicians against managed care organizations.

16

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS**
**STATE OF MISSOURI**

| | |
|---|---|
| RACHEL M. ENRIQUEZ Custodian for Diego Enriquez under IL/UTMA, On Behalf of Herself and All Others Similarly Situated,   )<br>  )<br>  )<br><br>Plaintiff,   )<br>  )<br>vs.   )<br>  )<br>EDWARD D. JONES & CO., L.P., THE JONES FINANCIAL COMPANIES, L.L.L.P., and EDJ HOLDING COMPANY, INC.,   )<br>  )<br>  )<br>Defendants.   )<br>  )<br>  )<br>  ) | Cause No.: 042-00126<br><br>Division 1 |

**DECLARATION OF MARC L. GODINO IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, AWARD OF ATTORNEY FEES, AND REIMBURSEMENT OF COSTS AND EXPENSES**

I, Marc L. Godino, hereby declare:

1) I am an associate at Glancy Binkow & Goldberg LLP, one of plaintiffs' counsel in the following related cases to the above captioned case: *Bressler v. Edward D. Jones & Co., et al.,* Civ. No. BC309500, Superior Court of California (the *"Bressler"* action), and *Potter v. Edward D. Jones & Co.,* Case No. BC310059 (the *"Potter"* action) (the *Bressler* and *Potter* actions are collectively referred to as the "California Class Actions").[1] I make this declaration in support of Plaintiffs' motion for final approval of settlement, and the California Class Counsel's motion for an award of attorney fees and reimbursement of costs and expenses. I have personal knowledge of the matters set forth in this declaration, and, if called as a witness, I could and would testify competently thereto.

2) I am an attorney in good standing and duly licensed and admitted to the Bar of California. The testimony set forth in this Declaration is based on information and belief and records maintained in the ordinary course of business by the firm.

## INTRODUCTION

3) The purpose of this declaration is to set forth the basis for Plaintiffs' motion for attorney fees and reimbursement of costs and expenses. This declaration demonstrates that the proposed settlement is an excellent result for the class, and that the California Class Counsel's motion for attorney fees and reimbursement of costs and expenses is fair and reasonable.

4) The settlement represents the fruit of nearly three years of litigation between the parties. During that time, the California Class Counsel, among other things, researched and drafted two complaints, propounded discovery, opposed Defendants' motions to dismiss, motions to strike,

---

[1] Murray Frank & Sailer, LLP, Reinhardt Wendorf & Blanchfield, and the Law Firm of Brian Barry, represent the other Plaintiffs' counsel involved in the California Class Actions (Glancy Binkow & Goldberg, LLP, Murray Frank & Sailer, LLP, Reinhardt Wendorf & Blanchfield, and the Law Firm of Brian Barry will be collectively referred as "California Class Counsel").

motions to remove, and motion to stay, developed factual and damages analyses, participated in extensive document review, prepared for and attended court appearances, engaged in arms-length settlement negotiations with Defendants in a several protracted out-of-state mediation sessions, and thereafter assisted in formalizing the terms of the settlement.

### PROCEDURAL AND SUBSTANTIVE BACKGROUND OF THE ACTION

5)      After extensive investigation, California Class Counsel filed Plaintiff Todd Bressler's class action complaint ("Bressler Action") in the Los Angeles, County Superior Court, State of California, on January 26, 2004.  Investigation included, among other things, a review of Edward Jones publicly disseminated representations, investigative interviews, and research regarding the California consumer protection statutes at issue.  Bressler is a California resident who maintains an investment account at Jones in which he holds shares in mutual funds companies listed on Jones' "preferred" list.

6)      The Bressler Action asserted three causes of action based solely on California state law– breach of fiduciary duties, unjust enrichment, and violation of California Business & Professions Code §17200 et seq.  Plaintiff alleged that Defendants collect over $100 million per year in secret kickbacks based on their clients' holdings in certain mutual fund families that Defendants promote as its "preferred" list of mutual funds.

7)      On February 16, 2004 Plaintiff served defendants with discovery requests and nine days later defendants removed the case.  Although Plaintiffs stated no grounds for federal jurisdiction, defendants asserted that Plaintiff's claims were preempted federal securities laws claims under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").  After Plaintiff file his motion to remand the case and after thoroughly briefing the issue, the District Court agreed with plaintiffs that they were not subject to federal jurisdiction, and remanded the case to the California state court.

8)      Thereafter, the Court consolidated the Bressler action with *Potter v. Edward Jones & Co.*, Case No. BC310059 (L.A. Sup. Ct. 2004) and on September 16, 2004 Bressler filed his

3

Consolidated Amended Complaint. Thereafter the parties negotiated an appropriate protective order governing discovery in the consolidated cases.

9)     In July 2004, California Class Counsel drafted opposition papers to Defendant's Motion to Stay Discovery.

10)     On October 18, 2004 defendants filed a demurrer and motion to strike and on November 12, 2004, Plaintiff filed papers in opposition to defendants' motions. Also, on November 18, 2004, plaintiff filed a motion to compel discovery which defendants subsequently opposed.

11)     On November 29, 2004 the court ordered supplemental briefing on the issue of the applicability of Proposition 64 to the claims asserted in the Consolidated Complaint. Accordingly, California Class Counsel researched and briefed the issue concerning Proposition 64.

12)     In January 2005, California Class Counsel began drafting Plaintiff's motion for class certification.

13)     In February 2005, the parties filed a joint stipulation and proposed order requesting a continuance of the various pending motions based on the fact that settlement discussions had been initiated. The court entered the proposed Order in February 2005. Thereafter, California Class Counsel participated in settlement discussions.

14)     From August through November, 2005, California Class Counsel participated in a massive review of documents produced by defendants in discovery. In fact, approximately a third of California Class Counsel's total Lodestar in this case represents time reviewing documents produced during discovery.

15)     In April, 2006 Defendants, for the second time, removed the case to federal court again claiming Plaintiff's claims were preempted federal securities laws claims under SLUSA. Plaintiffs thereafter filed a motion to remand the case. Prior to the hearing on plaintiff's motion to remand, in August 2006, the parties entered into a Memorandum of Understanding settling all Plaintiffs' actions.

16)     In September 2006, the federal court, without oral argument, denied plaintiff's motion to remand on procedural grounds and dismissed the case. Plaintiffs timely appealed that decision.

**THE REQUEST FOR ATTORNEY FEES AND EXPENSES REASONABLY INCURRED**

17)     The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by the partners, attorneys and professional support staff of my firm who were involved in this litigation.  The schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm, which are available at the request of the Court.  Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

18)     The hourly rates for the partners, attorneys and professional support staff in my firm included in Exhibit 1 are the same as the rates charged for their services in non-contingent matters and/or which have been accepted and approved in other securities or shareholder litigation.

19)     The total number of hours expended on this litigation by my firm is 1501.40 hours and the total lodestar for my firm is $616,164.75.

20)     My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

21)     Filed concurrently with this Declaration is the Declaration of Garret D. Blanchfield, Jr. filed on Behalf of the California Plaintiffs in this litigation.  Mr. Blanchfield's Declaration sets forth the identity and level of each attorney and paraprofessional of his firm who worked on this action, each of their current billing rates and the number of hours each devoted to this Litigation.  The total number of hours expended on this litigation by Reinhardt Wendorf & Blanchfield is 411.3 hours and the total lodestar is $167,974.25.

22)     Also included is the Declaration of Jacqueline Sailer filed on Behalf of the California Plaintiffs in this litigation.  Ms. Sailer's Declaration sets forth the identity and level of each attorney and paraprofessional of her firm who worked on this action, each of their current billing rates and the number of hours each devoted to this Litigation.  The total number of hours expended on this litigation is 988.6 hours and the total lodestar for Murray Frank & Sailer is $431,034.

23)    Also included is the Declaration of Brian Barry filed on Behalf of the California Plaintiffs in this litigation. Mr. Barry's Declaration sets forth the identity and level of each attorney and paraprofessional of his firm who worked on this action, each of their current billing rates and the number of hours each devoted to this Litigation. The total number of hours expended on this litigation is 244.57 hours and the total lodestar for The Law Offices of Brian Barry is $113,575.00.

24)    As discussed above, the California Class Counsel performed a wide range of services made necessary by the complexity of both the underlying facts presented by this case and the sophisticated legal issues that arise under the federal securities laws. These efforts included, among other things, substantial initial investigation and legal research concerning the merits of the case prior to filing the class action complaints, drafting the complaints, propounding discovery, responding to Defendants' motions to dismiss, motions to strike, motions to remove, motion to stay, preparing and attending court appearances, participating in a large document review, preparing a damage analysis, negotiating the settlement, and participating in the preparation of all the necessary papers in order to obtain the Court's approval of the settlement.

25)    Moreover, as set forth in the memorandum of points and authorities filed herewith, based on the factors analyzed by Missouri state courts, the requested amount of attorney fees is fair and reasonable.

## REQUEST FOR REIMBURSEMENT OF EXPENSES

26)    The California Class Counsel are also requesting reimbursement of their out-of-pocket expenses necessarily incurred and advanced by them in the prosecution of the litigation.

27)    The expenses and costs incurred by my firm are $15, 836.89 as detailed in Exhibit 2 attached hereto. My firm recorded these expenses as they were incurred, and they are reflected in its computerized bookkeeping records which were created from invoices, receipts and other proofs of the charges and payments.

28)    The expenses and costs incurred by Reinhardt Wendorf & Blanchfield, as set forth in the Declaration of Garrett Blanchfield are $5234.86.

6

29)    The expenses and costs incurred by Murray Frank & Sailer, as set forth in the Declaration of Jacqueline Sailer are $5,328.71.

30)    The expenses and costs incurred by the Law Offices of Brian Barry, as set forth in the Declaration of Brian Barry are $2502.05.

31)    The California Class Counsel believes these expenses were reasonably and necessarily incurred and were, in fact, critical to the Plaintiffs' ability to obtain the recovery here.

I declare under penalty of perjury that the foregoing is true and correct.
Executed this 19th day of September 2007, at Los Angeles, California.

Marc L. Godino

**EXHIBIT 1**

**GLANCY BINKOW & GOLDBERG LLP**
**IN RE EDWARD JONES LITIGATION**
**FIRM LODESTAR**

**FROM INCEPTION THROUGH SEPTEMBER 17, 2007**

| Attorneys | CUMULATIVE HOURS | RATE | | CUMULATIVE AMOUNT |
|---|---:|---|---|---:|
| Lionel Z. Glancy | 12.75 | $ 625.00 | $ | 7,968.75 |
| Peter A. Binkow | 236.40 | $ 575.00 | $ | 135,930.00 |
| Michael Goldberg | 52.75 | $ 575.00 | $ | 30,331.25 |
| Dale MacDiarmid | 22.30 | $ 395.00 | $ | 8,808.50 |
| Frederick W. Gerkens, III | 5.30 | $ 450.00 | $ | 2,385.00 |
| Marc Godino | 116.50 | $ 525.00 | $ | 61,162.50 |
| Daniel Hargis | 25.50 | $ 395.00 | $ | 10,072.50 |
| Robin B. Howald | 0.75 | $ 575.00 | $ | 431.25 |
| Joshua Kunis | 408.50 | $ 350.00 | $ | 142,975.00 |
| Marc I. Labaton | 1.40 | $ 475.00 | $ | 665.00 |
| Robert Perkins | 1.25 | $ 400.00 | $ | 500.00 |
| Avi Wagner | 410.10 | $ 395.00 | $ | 161,989.50 |
| Kara Wolke | 4.50 | $ 400.00 | $ | 1,800.00 |
| Total Attorney | 1298.00 | | $ | 565,019.25 |
| | | | | |
| Paralegal | | | | |
| Daniel C. Rann | 0.60 | $ 275.00 | $ | 165.00 |
| Tia Reiss | 24.00 | $ 255.00 | $ | 6,120.00 |
| Kyaa Heller | 49.00 | $ 255.00 | $ | 12,495.00 |
| Merissa Fuentes | 106.55 | $ 255.00 | $ | 27,170.25 |
| Matt Kane | 14.50 | $ 200.00 | $ | 2,900.00 |

| Attorneys | CUMULATIVE HOURS | RATE | CUMULATIVE AMOUNT |
|---|---|---|---|
| Matt Marr | 0.10 | $ 200.00 | $ 20.00 |
| Ricky Shah | 8.45 | $ 265.00 | $ 2,239.25 |
| Rachel Youngberg Payne | 0.20 | $ 180.00 | $ 36.00 |
| Total Paralegal | 203.40 | | $ 51,145.50 |
| | | | |
| **Total** | **1501.40** | | $ **616,164.75** |

## EXHIBIT 2

### GLANCY BINKOW & GOLDBERG LLP
### IN RE EDWARD JONES LITIGATION

### TABLE OF LITIGATION EXPENSES

### INCEPTION THROUGH SEPTEMBER 17, 2007

| ITEM | AMOUNT |
|------|-------:|
| COPIES | $ 1,763.00 |
| FILING FEES | $ 2,615.57 |
| TELEPHONE | $ 270.27 |
| FACSIMILE | $ 1,159.00 |
| POSTAGE | $ 106.41 |
| UPS & FEDERAL EXPRESS | $ 277.51 |
| RESEARCH | $ 323.17 |
| TRAVEL - AIRFARE | $ 2,801.90 |
| TRAVEL - AUTO | $ 325.40 |
| MEALS | $ 1,447.43 |
| PARKING | $ 61.44 |
| HOTEL | $ 685.79 |
| ASSESSMENTS | $ 4,000.00 |
| **TOTAL** | **$ 15,836.89** |

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| JOHN M. SPAHN, IRA, on Behalf of Himself and All Others Similarly Situated,<br><br>        Plaintiff,<br><br>vs.<br><br>EDWARD D. JONES & CO., L.P., THE JONES FINANCIAL COMPANIES, L.L.L.P., EDJ HOLDING COMPANY, INC., JOHN W. BACHMANN, DOUGLAS E. HILL, MICHAEL R. HOLMES, RICHIE L. MALONE, STEVEN NOVIK, DARRYL L. POPE and ROBERT VIRGIL JR.,<br><br>        Defendants. | CLASS ACTION<br><br>Cause No.: 4:04CV00086 HEA<br><br><br><br>Consolidated with:<br>4:04CV00118 CAS<br>4:04CV00255 DJS<br>4:04CV00282 DJS<br>4:04CV00466 HEA<br>4:04CV00467 HEA |

## DECLARATION OF MARC L. GODINO IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, AWARD OF ATTORNEY FEES, AND REIMBURSEMENT OF COSTS AND EXPENSES

I, Marc L. Godino, hereby declare:

1) I am an associate at Glancy Binkow & Goldberg LLP, one of plaintiffs' counsel in the following related cases to the above captioned case: *Bressler v. Edward D. Jones & Co., et al.,* Civ. No. BC309500, Superior Court of California (the "*Bressler*" action), and *Potter v. Edward D. Jones & Co.*, Case No. BC310059 (the "*Potter*" action) (the *Bressler* and *Potter* actions are collectively referred to as the "California Class Actions").[1] I make this declaration in support of Plaintiffs' motion for final approval of settlement, and the California Class Counsel's motion for an award of attorney fees and reimbursement of costs and expenses. I have personal knowledge of the matters set forth in this declaration, and, if called as a witness, I could and would testify competently thereto.

2) I am an attorney in good standing and duly licensed and admitted to the Bar of California. The testimony set forth in this Declaration is based on information and belief and records maintained in the ordinary course of business by the firm.

**INTRODUCTION**

3) The purpose of this declaration is to set forth the basis for Plaintiffs' motion for attorney fees and reimbursement of costs and expenses. This declaration demonstrates that the proposed settlement is an excellent result for the class, and that the California Class Counsel's motion for attorney fees and reimbursement of costs and expenses is fair and reasonable.

4) The settlement represents the fruit of nearly three years of litigation between the parties. During that time, the California Class Counsel, among other things, researched and drafted two complaints, propounded discovery, opposed Defendants' motions to dismiss, motions to strike, motions to remove, and motion to stay, developed factual and damages analyses, participated in extensive document review, prepared for and attended court appearances, engaged in arms-length settlement negotiations with Defendants in a several protracted out-of-state mediation sessions, and thereafter assisted in formalizing the terms of the settlement.

---

[1] Murray Frank & Sailer, LLP, Reinhardt Wendorf & Blanchfield, and the Law Firm of Brian Barry, represent the other Plaintiffs' counsel involved in the California Class Actions (Glancy Binkow & Goldberg, LLP, Murray Frank & Sailer, LLP, Reinhardt Wendorf & Blanchfield, and the Law Firm of Brian Barry will be collectively referred as "California Class Counsel").

## PROCEDURAL AND SUBSTANTIVE BACKGROUND OF THE ACTION

5)      After extensive investigation, California Class Counsel filed Plaintiff Todd

Bressler's class action complaint ("Bressler Action") in the Los Angeles, County Superior Court,

State of California, on January 26, 2004.  Investigation included, among other things, a review of

Edward Jones publicly disseminated representations, investigative interviews, and research

regarding the California consumer protection statutes at issue.  Bressler is a California resident

who maintains an investment account at Jones in which he holds shares in mutual funds

companies listed on Jones' "preferred" list.

6)      The Bressler Action asserted three causes of action based solely on California

state law– breach of fiduciary duties, unjust enrichment, and violation of California Business &

Professions Code §17200 et seq.  Plaintiff alleged that Defendants collect over $100 million per

year in secret kickbacks based on their clients' holdings in certain mutual fund families that

Defendants promote as its "preferred" list of mutual funds.

7)      On February 16, 2004 Plaintiff served defendants with discovery requests and

nine days later  defendants removed the case.  Although Plaintiffs stated no grounds for federal

jurisdiction, defendants asserted that Plaintiff's claims were preempted federal securities laws

claims under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").  After

Plaintiff file his motion to remand the case and after thoroughly briefing the issue, the District

Court agreed with plaintiffs that they were not subject to federal jurisdiction, and remanded the

case to the California state court.

8)      Thereafter, the Court consolidated the Bressler action with *Potter v. Edward

Jones & Co.*, Case No. BC310059 (L.A. Sup. Ct. 2004) and on September 16, 2004 Bressler

filed his Consolidated Amended Complaint.  Thereafter the parties negotiated an appropriate

protective order governing discovery in the consolidated cases.

9)      In July 2004, California Class Counsel drafted opposition papers to Defendant's

Motion to Stay Discovery.

10)     On October 18, 2004 defendants filed a demurrer and motion to strike and on November 12, 2004, Plaintiff filed papers in opposition to defendants' motions. Also, on November 18, 2004, plaintiff filed a motion to compel discovery which defendants subsequently opposed.

11)     On November 29, 2004 the court ordered supplemental briefing on the issue of the applicability of Proposition 64 to the claims asserted in the Consolidated Complaint. Accordingly, California Class Counsel researched and briefed the issue concerning Proposition 64.

12)     In January 2005, California Class Counsel began drafting Plaintiff's motion for class certification.

13)     In February 2005, the parties filed a joint stipulation and proposed order requesting a continuance of the various pending motions based on the fact that settlement discussions had been initiated. The court entered the proposed Order in February 2005. Thereafter, California Class Counsel participated in settlement discussions.

14)     From August through November, 2005, California Class Counsel participated in a massive review of documents produced by defendants in discovery. In fact, approximately a third of California Class Counsel's total Lodestar in this case represents time reviewing documents produced during discovery.

15)     In April, 2006 Defendants, for the second time, removed the case to federal court again claiming Plaintiff's claims were preempted federal securities laws claims under SLUSA. Plaintiffs thereafter filed a motion to remand the case. Prior to the hearing on plaintiff's motion to remand, in August 2006, the parties entered into a Memorandum of Understanding settling all Plaintiffs' actions.

16)     In September 2006, the federal court, without oral argument, denied plaintiff's motion to remand on procedural grounds and dismissed the case. Plaintiffs timely appealed that decision.

**THE REQUEST FOR ATTORNEY FEES AND EXPENSES REASONABLY INCURRED**

17)     The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by the partners, attorneys and professional support staff of my firm who were involved in this litigation. The schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm, which are available at the request of the Court. Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

18)     The hourly rates for the partners, attorneys and professional support staff in my firm included in Exhibit 1 are the same as the rates charged for their services in non-contingent matters and/or which have been accepted and approved in other securities or shareholder litigation.

19)     The total number of hours expended on this litigation by my firm is 1501.40 hours and the total lodestar for my firm is $616,164.75.

20)     My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

21)     Filed concurrently with this Declaration is the Declaration of Garret D. Blanchfield, Jr. filed on Behalf of the California Plaintiffs in this litigation. Mr. Blanchfield's Declaration sets forth the identity and level of each attorney and paraprofessional of his firm who worked on this action, each of their current billing rates and the number of hours each devoted to this Litigation. The total number of hours expended on this litigation by Reinhardt Wendorf & Blanchfield is 411.3 hours and the total lodestar is $167,974.25.

22)     Also included is the Declaration of Jacqueline Sailer filed on Behalf of the California Plaintiffs in this litigation. Ms. Sailer's Declaration sets forth the identity and level of each attorney and paraprofessional of her firm who worked on this action, each of their current billing rates and the number of hours each devoted to this Litigation. The total number of hours expended on this litigation is 988.6 hours and the total lodestar for Murray Frank & Sailer is $431,034.

5

23)     Also included is the Declaration of Brian Barry filed on Behalf of the California Plaintiffs in this litigation.  Mr. Barry's Declaration sets forth the identity and level of each attorney and paraprofessional of his firm who worked on this action, each of their current billing rates and the number of hours each devoted to this Litigation.  The total number of hours expended on this litigation is 244.57 hours and the total lodestar for The Law Offices of Brian Barry is $113,575.00.

24)     As discussed above, the California Class Counsel performed a wide range of services made necessary by the complexity of both the underlying facts presented by this case and the sophisticated legal issues that arise under the federal securities laws. These efforts included, among other things, substantial initial investigation and legal research concerning the merits of the case prior to filing the class action complaints, drafting the complaints, propounding discovery, responding to Defendants' motions to dismiss, motions to strike, motions to remove, motion to stay, preparing and attending court appearances, participating in a large document review, preparing a damage analysis, negotiating the settlement, and participating in the preparation of all the necessary papers in order to obtain the Court's approval of the settlement.

25)     Moreover, as set forth in the memorandum of points and authorities filed herewith, based on the factors analyzed by courts in the 8th Circuit, the requested amount of attorney fees is fair and reasonable.

## REQUEST FOR REIMBURSEMENT OF EXPENSES

26)     The California Class Counsel are also requesting reimbursement of their out-of-pocket expenses necessarily incurred and advanced by them in the prosecution of the litigation.

27)     The expenses and costs incurred by my firm are $15, 836.89 as detailed in Exhibit 2 attached hereto.  My firm recorded these expenses as they were incurred, and they are reflected in its computerized bookkeeping records which were created from invoices, receipts and other proofs of the charges and payments.

28)     The expenses and costs incurred by Reinhardt Wendorf & Blanchfield, as set forth in the Declaration of Garrett Blanchfield are $5234.86.

6

29)   The expenses and costs incurred by Murray Frank & Sailer, as set forth in the Declaration of Jacqueline Sailer are $5,328.71.

30)   The expenses and costs incurred by the Law Offices of Brian Barry, as set forth in the Declaration of Brian Barry are $2502.05.

31)   The California Class Counsel believes these expenses were reasonably and necessarily incurred and were, in fact, critical to the Plaintiffs' ability to obtain the recovery here.

I declare under penalty of perjury that the foregoing is true and correct.
Executed this 19th day of September 2007, at Los Angeles, California/

_____
Marc L. Godino

# EXHIBIT 1

**GLANCY BINKOW & GOLDBERG LLP**
**IN RE EDWARD JONES LITIGATION**
**FIRM LODESTAR**

### FROM INCEPTION THROUGH SEPTEMBER 17, 2007

| Attorneys | CUMULATIVE HOURS | RATE | CUMULATIVE AMOUNT |
|---|---|---|---|
| Lionel Z. Glancy | 12.75 | $ 625.00 | $ 7,968.75 |
| Peter A. Binkow | 236.40 | $ 575.00 | $ 135,930.00 |
| Michael Goldberg | 52.75 | $ 575.00 | $ 30,331.25 |
| Dale MacDiarmid | 22.30 | $ 395.00 | $ 8,808.50 |
| Frederick W. Gerkens, III | 5.30 | $ 450.00 | $ 2,385.00 |
| Marc Godino | 116.50 | $ 525.00 | $ 61,162.50 |
| Daniel Hargis | 25.50 | $ 395.00 | $ 10,072.50 |
| Robin B. Howald | 0.75 | $ 575.00 | $ 431.25 |
| Joshua Kunis | 408.50 | $ 350.00 | $ 142,975.00 |
| Marc I. Labaton | 1.40 | $ 475.00 | $ 665.00 |
| Robert Perkins | 1.25 | $ 400.00 | $ 500.00 |
| Avi Wagner | 410.10 | $ 395.00 | $ 161,989.50 |
| Kara Wolke | 4.50 | $ 400.00 | $ 1,800.00 |
| Total Attorney | 1298.00 | | $ 565,019.25 |
| | | | |
| Paralegal | | | |
| Daniel C. Rann | 0.60 | $ 275.00 | $ 165.00 |
| Tia Reiss | 24.00 | $ 255.00 | $ 6,120.00 |
| Kyaa Heller | 49.00 | $ 255.00 | $ 12,495.00 |
| Merissa Fuentes | 106.55 | $ 255.00 | $ 27,170.25 |
| Matt Kane | 14.50 | $ 200.00 | $ 2,900.00 |

| Attorneys | CUMULATIVE HOURS | RATE | CUMULATIVE AMOUNT |
|---|---|---|---|
| Matt Marr | 0.10 | $ 200.00 | $ 20.00 |
| Ricky Shah | 8.45 | $ 265.00 | $ 2,239.25 |
| Rachel Youngberg Payne | 0.20 | $ 180.00 | $ 36.00 |
| Total Paralegal | 203.40 | | $ 51,145.50 |
| | | | |
| **Total** | **1501.40** | | $ **616,164.75** |

**EXHIBIT 2**

**GLANCY BINKOW & GOLDBERG LLP**
**IN RE EDWARD JONES LITIGATION**

<u>TABLE OF LITIGATION EXPENSES</u>

**INCEPTION THROUGH SEPTEMBER 17, 2007**

| ITEM | | AMOUNT |
|------|---|--------|
| COPIES | $ | 1,763.00 |
| FILING FEES | $ | 2,615.57 |
| TELEPHONE | $ | 270.27 |
| FACSIMILE | $ | 1,159.00 |
| POSTAGE | $ | 106.41 |
| UPS & FEDERAL EXPRESS | $ | 277.51 |
| RESEARCH | $ | 323.17 |
| TRAVEL - AIRFARE | $ | 2,801.90 |
| TRAVEL - AUTO | $ | 325.40 |
| MEALS | $ | 1,447.43 |
| PARKING | $ | 61.44 |
| HOTEL | $ | 685.79 |
| ASSESSMENTS | $ | 4,000.00 |
| **TOTAL** | $ | **15,836.89** |